JOURNAL ENTRY AND OPINION
{¶ 1} This matter involves the consolidated appeals of Appellant-mother, T.B.J.[1] ("Mother"), concerning the determinations of the trial court, which awarded permanent custody of four of her children to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "Agency").
 {¶ 2} In accordance with the policy of this court, the children shall not be specifically identified, but will be referred to throughout this opinion as "Child 1," who is the child born July 3, 2003; "Child 2," who is the child born December 23, 2004; "Child 3," who is the child born August 30, 2006; and "Child 4," who is the child born June 20, 2007. For the reasons that follow, in Appeal Nos. 91917 and 91918, we affirm; in Appeal No. 91916, we reverse and remand for further proceedings.
 {¶ 3} In April 2006, Child 1 and Child 2 were removed from Mother's care, and CCDCFS filed a complaint requesting temporary custody alleging abuse and neglect. In May 2006, the trial court held a hearing where Mother admitted to the allegations of the complaint. The trial court then adjudicated Child 1 and Child 2 abused and neglected and granted temporary custody to CCDCFS. *Page 4 
 {¶ 4} Child 3 was born in the midst of the custody proceedings involving Child 1 and Child 2. Child 3 was removed from Mother's care in September 2006. CCDCFS filed a complaint requesting temporary custody of Child 3. At a hearing on the complaint, the trial court adjudged Child 3 dependent and awarded temporary custody to CCDCFS.
 {¶ 5} In August 2007, the Agency filed a motion to modify its temporary custody to permanent custody as to Child 1, Child 2, and Child 3.
 {¶ 6} Child 4, born June 20, 2007, was placed into emergency custody on June 22, 2007. CCDCFS filed a complaint seeking permanent custody alleging Child 4 to be abused and dependent.
 {¶ 7} The trial court conducted permanent custody hearings as to all four children on April 11 and 15, 2008 and awarded permanent custody of all of the children to the Agency. As to Child 4, the parties agree that the court did not hold a separate adjudicatory hearing to determine whether she was dependent and neglected and only concluded this upon evidence presented at the permanent custody hearing.
 {¶ 8} Mother pursued this appeal raising four assignments of error, which will be addressed out of order and together when appropriate for ease of discussion. *Page 5 
 {¶ 9} "II. The trial court erred in finding that the minor child [Child 4] was a neglected and dependent child as such decision was against the manifest weight of the evidence and resulted in a manifest miscarriage of justice."
 {¶ 10} "III. The trial court erred in adjudicating [Child 4] a neglected and dependent child and the trial court further erred in awarding CCDCFS permanent custody of [Child 4] without a bifurcated hearing on the complaint in neglect and dependence and instead holding only a dispositional permanent custody hearing."
 {¶ 11} In these assignments of error, Mother contests the adjudication of Child 4 as being neglected and dependent as well as the trial court's award of permanent custody of this child to the Agency. Mother supports her argument, in part, upon the fact that the trial court did not hold separate adjudicatory and dispositional hearings concerning this child as required by law. The state has conceded these errors based on the authority of Juv. R. 34 and R.C. 2151.25(B)(1). To that extent, these assignments of error are sustained.
 {¶ 12} The orders adjudicating Child 4 neglected and dependent and awarding permanent custody of Child 4 to the Agency are vacated, and this matter is remanded to the trial court for further proceedings in accordance with the law.
 {¶ 13} "IV. Appellant was denied effective assistance of trial counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution." *Page 6 
 {¶ 14} Mother's claims of ineffective assistance of counsel pertain to the proceedings resulting in the adjudication and dispositional orders as to Child 4, which we have vacated and remanded for further proceedings. Accordingly, this assignment of error is overruled as moot. App. R. 12(A)(1)(c).
 {¶ 15} "I. The trial court erred in granting Cuyahoga County Department of Children and Family Services' Motion for Permanent Custody as such decision was against the manifest weight of the evidence and resulted in a manifest miscarriage of justice."
 {¶ 16} Mother challenges the trial court's decision that granted the Agency's motion for permanent custody upon her belief that it was against the manifest weight of the evidence. Mother raises four issues, which will be addressed below.
 {¶ 17} In considering an award of permanent custody, the court must first determine whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody. R.C. 2151.414(D). In determining the best interest of the child during the permanent custody hearing, the court must consider the factors listed in R.C. 2151.414(D), which include the reasonable probability the child will be adopted; the interaction of the child with parents, siblings, and foster parents; the wishes of the child; the custodial history of the child; and the child's need for a legally secure permanent placement. *Page 7 
 {¶ 18} In addition to determining the child's best interest, the court must make a second determination before granting permanent custody: it must determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. R.C. 2151.414(B)(1)(a). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply, including the following:
 {¶ 19} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 20} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home *Page 8 
for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code;
 {¶ 21} "***
 {¶ 22} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 23} "***
 {¶ 24} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 25} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order *Page 9 
issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 {¶ 26} "***
 {¶ 27} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 28} "(15) The parent has committed abuse as described in section 2151.031 [2151.03.1] of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 29} "(16) Any other factor the court considers relevant."
 {¶ 30} The trial court found that all of the above factors applied with regard to the award of permanent custody of Child 1, Child 2 and Child 3 to the Agency.
A. Standard of review.
 {¶ 31} The standard of review employed by an appellate court reviewing a decision granting permanent custody to a child services agency is stated as follows: *Page 10 
 {¶ 32} "[I]t is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. Miller v.Miller (1988), 37 Ohio St.3d 71, 74. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures, and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey (1952), 158 Ohio St. 9,13. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Accordingly, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion.Dailey v. Dailey (1945), 146 Ohio St. 93; Trickey, supra. Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219."In re Benavides (May 3, 2001), Cuyahoga App. No. 78204.
 B. Whether Mother would be able to parent her children within a reasonable time and whether appellant failed continuously and *Page 11 repeatedly to substantially remedy the conditions that initially caused the children to be placed outside the home.
 {¶ 33} In her first and second issues, Mother asserts that the Agency failed to establish that she would not be able to parent her children within a reasonable time and that she failed to remedy the conditions that initially caused them to be placed outside of the home. The trial court found there was clear and convincing evidence to establish that "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child[ren] to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside the child[ren]'s home." The court also found the children could not "be placed with one of the child's parents within a reasonable time or should not be placed with either them."
 {¶ 34} As stated, Child 1 and Child 2 were removed from Mother's care in April 2006, and Mother admitted the allegations of the complaint, resulting in temporary custody to the Agency. Child 3 was removed from Mother's care in September 2006, shortly after his birth, and committed to temporary custody of the Agency the same month. By the time of the hearings on the Agency's motions for permanent custody of these children, they had all been in the Agency's custody for twelve or more months of a consecutive 22-month period. *Page 12 
 {¶ 35} Evidence was presented at the hearing that Mother was living with D.J., [2] the biological or legal father of Child 1, Child 2, and Child 3 ("Father"). Much evidence was adduced that Father was a regular abuser of cannabis and that he refused to cease use of it or obtain treatment. Many witnesses testified to Father's complete unwillingness to cease using, which resulted in his discharge from treatment programs. There was no evidence presented that would indicate any possibility that Father would cease abusing the drug in the future.
 {¶ 36} Mother was diagnosed with major depressive disorder and exhibited signs of a personality disorder. She tested in the borderline mentally retarded range and showed signs of a thought disorder. She had attention difficulties, suicidal thoughts, difficulty interacting in stressful situations, and displayed poor judgment. Indeed, Mother attempted suicide with a steak knife, requiring her admission to Hanna Pavilion. Mother tested low for adaptive functioning and had an inability to deal with stress and pressure, including behavioral problems of children. In the professional opinion of the clinical psychologist who evaluated her, Mother was not capable of functioning as a parent at the time of *Page 13 
the evaluation in 2006, and, absent mother obtaining on-going treatment, his opinion would not change.
 {¶ 37} There is no evidence in the record that Mother was in active treatment or counseling for these concerns at the time of the permanent custody hearing. The case worker was only able to verify Mother's mental health counseling to a period of October 2007.
 {¶ 38} The behavioral problems and disabilities of Child 1, Child 2, and Child 3 are well documented in the record. It was stated more than once that Child 1 does not listen to anybody and acts out of control, requiring assistance of security at supervised visits with the parents. Likewise, Child 2 suffers from disabilities and displays inappropriate behaviors for a child of her young age. Both Child 2 and Child 3 qualified for early intervention services. While the behavioral problems cannot be attributed entirely to the parents, especially in light of the fact that these children have not been in the parents' custody for much of their lives, the special needs will require certain abilities and skills from Mother and Father in order to provide appropriate parenting. There is no indication in the record that either Mother or Father would be capable of parenting the special needs of these children. Although the case worker indicated that Mother had substantially complied with the objectives of her case plan, the evidence also reflected that she did not maintain the mental health counseling component. *Page 14 
 {¶ 39} A paternal aunt testified to witnessing the constant abuse of Mother and Child 1 by Father. She reported that Mother did nothing to stop Father because she was afraid of him. There was also testimony that the parents would not feed the children until 6:00 p.m. According to the case worker, Mother reported that Father spent all the money to buy marijuana.
 {¶ 40} The record shows that Father failed to complete the psychological evaluation, stating he could not afford the $75[3] to do so, yet at the same time he continued to test positive for drug use.
 {¶ 41} The evidence also included that paternal grandmother lost custody of the children after an iron burn was discovered on one of them following a visit by Father, in violation of the Agency's rules.
 {¶ 42} In addition, there was no dispute that neither Mother nor Father had anywhere for the family to live. The house was boarded up, and testimony indicated Mother had somehow lost her Section 8 assistance. The house was in foreclosure, and Mother's plan was to move into a homeless shelter. Father indicated they were looking for a two-bedroom apartment together. Despite the loss of housing, the case worker and other witnesses expressed concern over the unsanitary state in which the residence was kept. While Mother objected to the untimeliness of adding stable housing to the case plan days prior to the custody *Page 15 
hearing, housing remains a basic need. The guardian ad litem for the children recommended permanent custody be awarded to the Agency.
 {¶ 43} As set forth above, the trial court made findings pursuant to R.C. 2151.414(E)(1), (2), (4), (8), (9), (14), and (15). The trial court's findings that the parents failed continuously and repeatedly to substantially remedy the conditions that caused the removal of the children and that the children could not be placed with Mother within a reasonable time were supported by the evidence and was not an abuse of discretion.
C. Reasonable efforts to prevent the continued removal.
 {¶ 44} Mother's third issue maintains that the Agency did not make reasonable efforts to prevent the children's removal. The Agency contends that a reasonable efforts determination is not required by statute or controlling precedent upon a motion for permanent custody or to the hearings held on such motions. See In re C.F., 113 Ohio St.3d 73,2007-Ohio-1104, ¶ 41 ("[b]y its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33 or2151.353. See R.C. 2151.419(A)(1). These sections involve adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. The statute makes no reference to a hearing on a motion for permanent custody. Therefore, `[b]y its plain terms, the statute does not apply to *Page 16 
motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.'")
 {¶ 45} However, the court in In re C.F. went on to state: "This does not mean that the agency is relieved of the duty to make reasonable efforts. At various stages of the child-custody proceeding, the agency may be required under other statutes to prove that it has made reasonable efforts toward family reunification. To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the `reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time. However, the procedures in R.C. 2151.414 do not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody." Id. at ¶ 42.
 {¶ 46} The court held as follows: "R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413. However, except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights. If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." Id. at ¶ 43. *Page 17 
 {¶ 47} In this case, the trial court did rely upon R.C. 2151.414(E)(1); however, it did make a reasonable efforts determination that the Agency "has made reasonable efforts to prevent the removal of the child from her home, or to make it possible for the child to return home. Relevant services proviede [sic] to the family included: parenting education classes, drug assessment and treatment, anger management classes, domestic violence counseling, mental health counseling, psychological evaluation, and basic needs, i.e. housing."
 {¶ 48} Although Mother contends that the Agency failed to pursue placement with relatives, this is not supported by the record. The children were twice placed and removed from the custody of relatives, specifically a paternal aunt and grandmother. In both instances, it was the interference, threats, or harassment by Father that was given as the main cause for the removal from these placements.
 {¶ 49} To the extent that K.B. expressed interest in obtaining custody, the record indicates she was not a relative, but rather an interested party. She made an initial inquiry into obtaining custody and was told she would have to complete training and classes. K.B. reportedly left a message with the case worker to follow up, which the case worker denied receiving. K.B. later moved out of town. *Page 18 
 {¶ 50} Each of the foster mothers testified in court and reported loving the children in their respective custody. The case worker also testified that the children seemed to be making improvements in the care of the foster parents.
 {¶ 51} With only one arguable exception, [4] the trial court's reasonable efforts determination was supported by the record; therefore, this issue lacks merit.
D. Best interests of the children.
 {¶ 52} Mother's final issue under this assignment of error is that the trial court erred in finding it was in the children's best interest to terminate parental rights.
 {¶ 53} This determination requires an application of R.C. 2151.414(D).In re C.F., supra at ¶ 57. In this case, the trial court explicitly stated its consideration of the relevant factors, including the interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster parents (R.C. 2151.414(D)(1)); the wishes of the child (R.C. 2151.414(D)(2)); the custodial history of the children (R.C. 2151.414(D)(3)); and the child's need for a legally secure permanent placement and whether that type *Page 19 
of placement can be achieved without a grant of permanent custody (R.C. 2151.414(D)(4)).
 {¶ 54} The trial court also made a finding that the parents have withheld medical treatment or food from the children when they had means to provide them and that the parents have placed the children at substantial risk of harm two or more times due to alcohol or drug abuse and have rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued requiring treatment of the parent was journalized. See R.C. 2151.414(D)(5), R.C. 2151.414(E)(8), and R.C. 2151.414(E)(9).
 {¶ 55} In addition, the trial court considered the recommendation of the guardian ad litem for the children, who in each case recommended that permanent custody be awarded to the Agency.
 {¶ 56} The evidence includes that the parents did visit regularly; however, there was little interaction by Mother and Father with the children. The parents were observed as having little or no control over the children, who would run around the entire time. On various occasions, Child 1 had to be removed from the visits by security. The foster parents and other witnesses, including psychologists, reported good interactions among the children and the foster parents.
 {¶ 57} According to the guardian ad litem, the children were too young to express their wishes; however, the GAL's report and his testimony following the *Page 20 
permanent custody hearing recommended that permanent custody was in the best interest of the children.
 {¶ 58} The custodial history of the children reflected their placement in the Agency's temporary custody for nearly two years. Placement with two different relatives was attempted and terminated. In each case, the respective relative blamed Father for the cause of the removal. At the time of the permanent custody hearings, the children were in the care of foster mothers, who all testified that they loved the children.
 {¶ 59} Although the trial court's finding of a withholding of medical treatment or food finds little support in the record, the remaining findings are amply supported by the record.
 {¶ 60} There is clear and convincing evidence to support the finding that granting permanent custody to the Agency was in the best interest of the children. This issue is overruled.
 {¶ 61} Having found no merit to appellant's first assignment of error, it is overruled. The award of permanent custody of Child 1, Child 2, and Child 3 to the Agency is affirmed.
 {¶ 62} Judgment in Appeal Nos. 91917 and 91918 is affirmed; judgment in Appeal No. 91916 is reversed and remanded for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed. *Page 21 
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.
[2] There was some testimony in the record that R.R. was the biological father of Child 1; however, that individual had no contact with the child, nor did he provide any support for him. According to the record, Mother and Father were married and resided together at all times until the removal of the children from their custody. Thereafter, there is a conflict whereby Mother had indicated she would be living in a homeless shelter without Father, but Father indicated he and Mother were looking for two-bedroom apartments in which to cohabitate.
[3] Father stated he was employed at a corner store. He failed to follow up on several referrals for evaluation and, ultimately, the Agency offered to pay half of the $150 fee required by the final referral. Father never completed this requirement.
[4] There is little evidence that the Agency made efforts, if they even had time to do so, with regard to the stable housing issue. The residence went into foreclosure and, by the time of the hearing, the Agency had offered to provide financial assistance to the parents towards housing. *Page 1