Judgment reversed<br>and cause remanded.

FARMER, P.J., and EDWARDS, J., concur.

---

## In re B.S.

[Cite as *In re B.S.*, 184 Ohio App.3d 463, 2009-Ohio-5497.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 92868, 92870, 92871, 92872 and 92880.

Decided Oct. 15, 2009.

Betty C. Farley, for appellant B.M.

Gregory T. Stralka, for appellant N.S.

Timothy R. Sterkel, for appellant D.S.

William D. Mason, Cuyahoga County Prosecuting Attorney, and James M. Price, Assistant Prosecuting Attorney; and Yvonne C. Billingsley, for appellee Cuyahoga County Department of Children and Family Services.

James Dunn, for appellee D.S.

McNamara & Loxterman and Sheila M. Sexton, for appellee N.S.

Anjanette Arabian Whitman, guardian ad litem for the children.

Buckeye Legal Center and Martin Keenan, guardian ad litem for N.S.

---

KENNETH A. ROCCO, Presiding Judge.

{¶ 1} In these consolidated appeals, appellants B.M.,[1] natural mother of the two subject children; N.S.,[2] natural father of the child B.S.; and D.S.,[3] natural father of the child D.M., each appeal from the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, to terminate his or her parental rights and to grant permanent custody of the children to the Cuyahoga County Department of Children and Family Services ("the agency").

{¶ 2} B.M. presents three assignments of error. She claims that the juvenile court's decision should be reversed because the evidence presented had not demonstrated (1) that permanent custody was in her children's best interests, (2) that she had failed to remedy the conditions that caused her children's removal from her home, or (3) that the agency had made reasonable efforts to reunify her with her children.

{¶ 3} N.S. presents four assignments of error. He claims that under federal law, the juvenile court lacked jurisdiction to proceed and that the court also applied the wrong standard of proof under either federal or state law. He further claims that his trial counsel provided ineffective assistance.

---

1. Pursuant to this court's policy, the individuals involved in this action are referred to by initials in order to protect their privacy. B.M.'s appeals were designated Nos. 92868 and 92870.

2. Nos. 92871 and 92872. Because the two male appellants are brothers who share the same first and last initials, this court has chosen a letter from this appellant's name to differentiate him from his brother.

3. No. 92880.

{¶ 4} D.S. presents four assignments of error. He claims that the juvenile court failed to comply with notice requirements prior to proceeding with the action, that the court's decision is unsupported by sufficient evidence, that the court acted improperly when it decided the agency's motion for permanent custody as to two children at the same time, and that his trial counsel provided ineffective assistance.

{¶ 5} Upon a review of the record, this court notes that N.S. lacks standing to appeal the juvenile's court's decision as to D.M.; therefore, App. No. 92872 is dismissed. Furthermore, this court agrees with none of the appellants' claims. Consequently, their assignments of error are overruled, and the juvenile court's decision is affirmed.

{¶ 6} The record reflects that the agency initially sought predispositional temporary custody of D.M.[4] on July 10, 2007. At that time, the child was approximately nine months old. Both B.M. and N.S., as putative father, stipulated to the need. Upon obtaining predispositional temporary custody of D.M., the agency immediately filed a motion for temporary custody.

{¶ 7} According to the affidavit of the agency's social worker, Veronica Davis, due to B.M.'s use of drugs during her pregnancy, D.M. had been born at only 29 weeks of gestation "with multiple medical problems." The child immediately had been transferred to a special children's hospital, where he had remained. Since the time of his birth, the child had undergone four heart surgeries. Although he was ready for discharge, he required "multiple medications" and nourishment via a "feeding tube."

{¶ 8} Davis averred that neither the mother, B.M., nor the putative father, N.S., was able to meet the child's specialized medical needs, that neither of them had attended instruction for learning the specialized care the child required, that neither of them had an adequate source of income and stable housing, that both of them had engaged in domestic violence against each other, that both of them used drugs and alcohol "excessively," and that neither of them had undertaken the recommended drug assessment or treatment.

{¶ 9} Davis further alleged that N.S. had failed to establish paternity. As a last point, Davis indicated that if N.S. were not the child's father, the child's natural father had failed to either establish paternity or to support, visit, or communicate with D.M. since his birth.

{¶ 10} On September 18, 2007, a few months after the agency obtained temporary custody of D.M., B.M. gave birth to her second son, B.S. This child, too, was born with medical problems; B.M. tested positive for cocaine use during

---

4. Born October 6, 2006.

her pregnancy and at B.S.'s birth. The agency followed the same procedure with B.M.'s second child, i.e., first obtaining emergency custody, with B.M. and N.S. both stipulating to the need.

{¶ 11} At the emergency-custody hearing, the children's guardian ad litem ("GAL") asked B.M. and N.S., "[I]s there any Indian blood in the families?" Only N.S. responded. He first indicated that his "grandmother" was "full-blooded," then changed his answer to "great-grandmother." N.S. asserted that this relative had been born on a reservation.

{¶ 12} In reply to the court's follow-up question as to "which tribe," N.S. further stated that this relative was "Sioux." The GAL told the court that with respect to D.M., she had been informed only that the child might have Cherokee blood. The GAL stated that because N.S. had never provided any indication that he had anything except Cherokee ancestors, all the previous custody notices had been sent to the Cherokee bands. N.S. indicated that he had Sioux ancestors on his "mother's side" and promised to obtain the information.

{¶ 13} Both D.M. and B.S. were placed with the same foster family. The foster mother had been trained as a registered nurse.

{¶ 14} The record reflects that after the agency filed a motion seeking temporary custody of B.S., the juvenile court conducted a hearing on the motion, referred both B.M. and N.S. to the "drug court," and continued the matter. The order was journalized on October 7, 2007.

{¶ 15} The drug court required both B.M. and N.S. to commit to taking steps for treatment. Both agreed to do so. However, the record reflects that each proved recalcitrant.

{¶ 16} On November 7, 2007, the agency filed an amended case plan for the family. To address substance-abuse and domestic-violence concerns, B.M. and N.S. agreed to "attend, participate in and successfully complete treatment and aftercare" and "to attend, participate in and complete a Domestic Violence program." To address the children's needs for a proper physical environment, B.M. and N.S. agreed to secure and maintain safe and stable housing and to establish financial resources to support the children.

{¶ 17} B.M. also agreed to complete a psychological evaluation. N.S. agreed to establish paternity of the two boys, and, if paternity was established, to pay child support. For its part, the agency indicated that it would secure the resources to enable B.M. and N.S. to comply and would monitor their progress.

{¶ 18} On November 28, 2007, the juvenile court conducted a hearing on the agency's motion for temporary custody of B.S. After B.M. and N.S. admitted the allegations, the court entered an order finding the child to be neglected and

dependent and granting the agency's motion. The order was journalized on December 13, 2007.

{¶ 19} On January 15, 2008, the drug court discharged both B.M. and N.S. for their failure to comply with its requirements. The cases were returned to the juvenile court "for review of Temporary Custody."

{¶ 20} On March 13, 2008, the agency filed motions for permanent custody of both children. The affidavits accompanying the motions were nearly identical.

{¶ 21} Davis averred, among other things, that the parents (1) had failed to substantially remedy the conditions that caused the children to be placed outside the home, (2) had mental illnesses and chemical dependencies, (3) were unwilling to provide an adequate permanent home, and (4) placed the children at a substantial risk of harm. As to the last point, Davis particularly mentioned that the parents "refused to familiarize themselves with and learn how to care for the [children's] specialized medical needs."

{¶ 22} On April 18, 2008, the agency filed a motion in D.M.'s case to remove N.S. as a party. Genetic testing had proven that N.S. was not the child's biological father.

{¶ 23} On April 24, 2008, the agency filed a motion in D.M.'s case to join D.S., N.S.'s brother, as a party. Genetic testing had proven to a 99 percent certainty that D.S. was D.M.'s biological father. The juvenile court granted both motions in an order dated May 20, 2008.

{¶ 24} D.S. established paternity of D.M. on June 25, 2008. At that point, the agency included him in the case plan for D.M.

{¶ 25} On June 17, 2008, the juvenile court issued a journal entry in both cases that scheduled them for a final pretrial hearing in July and scheduled a trial date on August 26, 2008. On July 29, 2008, the juvenile court appointed a GAL for D.S.

{¶ 26} By August, Davis noted on her case review that D.S. had complied with the need to establish paternity and with attending programs. When the cases were called on August 26, however, the matter had to be postponed.

{¶ 27} For the record, the agency's attorney indicated that she had used the information provided by the biological fathers to send notice of the proceeding on August 4, 2008, to the "Rosebud Sioux Tribe." She further indicated that on "August 7, 2008 a representative from the Tribe signed for the certified mail," that the tribe's "Indian Child Welfare Act ["ICWA"] specialist" had begun an official investigation, but that using the name provided, the specialist "could not find anybody." The agency's attorney concluded that she was "just waiting for the official documentation from the tribe that ICWA does not apply."

{¶ 28} Based upon the need for additional time, the juvenile court scheduled another hearing for October 7, 2008. On September 3, 2008, the agency filed a notice with the court in D.M.'s case that he was "not an Indian child as defined by 25 U.S.C.1903(4)," and, thus, the case was not controlled by the ICWA. According to the attached exhibit, viz., a letter from the Rosebud Sioux Tribe's ICWA Specialist, neither the parents nor their ancestors had been "enrolled" in the tribe; therefore, the child was not eligible to be enrolled.

{¶ 29} At the October 7, 2008 hearing, the agency notified the court that D.S. refused to submit a hair sample for drug-testing purposes. The court addressed D.S. about the need to comply with the agency's requests.

{¶ 30} In his exchange with the court, D.S. complained about spending $150 for D.M.'s birthday, then being unable to "light candles" to celebrate the occasion because of the medical prohibitions in place. D.S. also complained about his visits with D.M. being "canceled." D.S. acknowledged that he had problems with "substance abuse and mental illness, because I'm bipolar." The court had to remind him that his son was "medically fragile" and had to forbid him to videotape his son's diaper changes.

{¶ 31} On December 2, 2008, the cases came to trial on the agency's motion for permanent custody. The court heard testimony from the following witnesses: (1) Cheryl Kunkler, the children's foster mother, (2) Davis, (3) Sandra Dvorak, president of Advantage Healthcare, the facility that performed the drug testing on samples provided by B.M., N.S., and D.S., and (4) Julie Alexander, family advocate in the agency's "START" [5] unit.

{¶ 32} In an order dated January 28, 2009, the juvenile court granted the agency's motions for permanent custody as to both D.M. and B.S. Appellants have appealed from that order. Their appeals will be addressed one by one.

{¶ 33} In App. Nos. 92868 and 92870, B.M. presents the following assignments of error:

{¶ 34} "I. The [Agency] failed to show by clear and convincing evidence that permanent custody is in the minor children's best interests.

{¶ 35} "II. The [Agency] failed to show by clear and convincing evidence that appellant had not remedied the conditions which caused the removal of the children from the home.

{¶ 36} "III. The [Agency] failed to satisfy its burden to prove that it made reasonable efforts to reunify appellant and her children."

---

5. Alexander testified that the initials stand for "Sobriety Treatment And Recovery Team."

{¶ 37} In a backwards manner, B.M. argues in her first and second assignments of error that the juvenile court's decision is unsupported in the record. This court disagrees.

{¶ 38} The juvenile court must satisfy two requirements before ordering that a child be placed in the permanent custody of a children's services agency. First, the court must find by clear and convincing evidence that one of the four conditions under R.C. 2151.414(B)(1) exists. In this case, the court found that R.C. 2151.414(B)(1)(a) applied. *In re Baby Boy M.*, Cuyahoga App. No. 91312, 2008-Ohio-5271, 2008 WL 4519120.

{¶ 39} R.C. 2151.414(B)(1)(a) provides that "the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that * * * the child is not abandoned or orphaned, [or] has not been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

{¶ 40} Pursuant to R.C. 2151.414(E), "in determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." (Emphasis added.)

{¶ 41} The juvenile court is required only to consider the 16 factors, and only one factor needs to be resolved in favor of permanent custody to require the court to enter such a finding. *In re Hauserman* (Feb. 3, 2000), Cuyahoga App. No. 75831, 2000 WL 126754. In this case, the juvenile court found that at least two of the factors under R.C. 2151.414(E) had been met.

{¶ 42} The court found that B.M. failed to substantially remedy the conditions causing the children to be placed outside the home. R.C. 2151.414(E)(1). The court based this finding on the testimony that indicated that B.M. had failed to complete any portion of the case plan. Despite the agency's efforts to help her end her substance abuse, B.M. could not remain drug free.

{¶ 43} The court further found that B.M. had demonstrated a lack of commitment by failing to regularly support, visit, or communicate with the children, or by other actions that showed an unwillingness to provide a permanent home.

R.C. 2151.414(E)(4). The court based this finding on testimony that indicated that B.M. not only lacked any conception of the extent of the medical needs of her children, but appeared to be at a loss when the children expressed discomfort in her presence.

{¶ 44} Consequently, the trial court's determination that the children could not be placed with B.M. within a reasonable time was supported by the evidence.

{¶ 45} Since the juvenile court properly determined that one of the R.C. 2151.414(B)(1) conditions was met, this court proceeds to review whether the juvenile court appropriately determined, by clear and convincing evidence, that permanent custody is in the best interest of the children by considering all relevant factors, including those listed in R.C. 2151.414(D).

{¶ 46} In determining the best interest of a child, a trial court is to consider all relevant factors, including, but not limited to, the five under R.C. 2151.414(D). The factors include "the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers; the wishes of the child; the custodial history of the child; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency * * *."

{¶ 47} The evidence in this case demonstrated that the children had extensive medical issues that required intensive attention to their needs. Kunkler testified, for instance, that it took "14 hours a day" in order "to get [D.M.'s] nutrition in him." Moreover, he had to have "his medications a half-an-hour before the tube feed," and she had to calculate how much formula and how much water he received during the day. B.M., however, was not equipped either physically or mentally to attend to those needs.

{¶ 48} Since the children were too young to express their wishes, their GAL submitted a report in which she stated her belief that permanent custody was in the best interest of the children. The children had been in temporary custody since their births; at the time of the permanent-custody hearing, D.M. was two years old, and B.S. was a year old. The children required not only constant care and monitoring, but numerous medications, physical therapy, and additional surgeries.

{¶ 49} Based upon the evidence produced at the dispositional hearing, the trial court appropriately determined that permanent custody was in the best interest of the children. Accordingly, B.M.'s first and second assignments of error are overruled.

{¶ 50} B.M. also argues that the juvenile court erred in finding that the agency made "reasonable efforts" to prevent removal of the children from their

home. She asserts that a more thorough analysis of the record, as warranted pursuant to R.C. 2151.419, undermines the juvenile court's finding.

{¶ 51} The Ohio Supreme Court addressed this issue in *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41, when the court stated, "[B]y its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33 or 2151.353. See R.C. 2151.419(A)(1). * * * The statute makes no reference to a hearing on a motion for permanent custody." Id.

{¶ 52} The Supreme Court went on to state, however, that "[t]o the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the 'reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time." Id. at ¶ 42.

{¶ 53} In this case, in relying upon R.C. 2151.414(E)(1), the juvenile court made a finding that the agency made reasonable efforts to reunify the children with B.M. This is supported in the record. Davis and Alexander testified that B.M. was referred for in-patient drug treatment, was encouraged to attend classes while D.M. was in the hospital to learn to care for his medical needs, and was referred to a domestic-violence program. B.M., however, "never followed through."

{¶ 54} Therefore, the juvenile court's "reasonable efforts" determination will not be disturbed. *In re D.J.*, Cuyahoga App. Nos. 91916, 91917 and 91918, 2009-Ohio-1095, 2009 WL 625519; cf., *In re Baby Boy M.*, 2008-Ohio-5271, ¶ 41.

{¶ 55} Accordingly, B.M.'s third assignment of error also is overruled.

{¶ 56} In App. Nos. 92871 and 92872, N.S. presents the following assignments of error:

{¶ 57} "I. The trial court lacked jurisdiction to hear the case as a result of a violation of due process under 25 U.S.C. Sections 1911 and 1912.

{¶ 58} "II. The trial court erred when it granted permanent custody without the requisite findings mandated by 25 U.S.C.1912(f).

{¶ 59} "III. The trial court applied the wrong provisions of Ohio law when it concluded [that N.S.] failed to substantially remedy the condition that caused the removal of the children.

{¶ 60} "IV. [N.S.] was deprived of his right to effective assistance of counsel when trial counsel failed to object to several matters that could be used to grant permanent custody."

{¶ 61} Prior to addressing N.S.'s arguments, this court first notes that as to D.M., because N.S. is not the child's father, N.S. lacks standing to challenge

the juvenile court's order granting permanent custody of D.M. to the agency. Consequently, App. No. 92872 is dismissed.

{¶ 62} N.S. argues in his first and second assignments of error that the juvenile court was required to comply with and then to apply federal law before proceeding to determine custody of B.S. because B.S. has Native American heritage. This court disagrees.

{¶ 63} The record reflects that N.S. raised the possibility that his child had Native American ancestry. He provided no support for his suggestion. *In re Jordan* (Jan. 30, 2002), Summit App. Nos. 20773 and 20786, 2002 WL 121211.

{¶ 64} Moreover, after receiving notice of the proceeding, none of the tribes N.S. mentioned claimed any interest in B.S. The tribes declined to participate specifically because B.S. was not deemed to be an "Indian child," as defined by federal law. Under these circumstances, the issues N.S. raises in his first and second assignment of error lack merit and are therefore overruled. Id.; see also *In re Taylor*, Tuscarawas App. No. 2005 AP 11 0081, 2006-Ohio-6025, 2006 WL 3317719.

{¶ 65} In his third assignment of error, N.S. asserts that the juvenile court relied improperly upon R.C. 2151.414(E)(1) in its decision. He argues that it is a "general" provision, and, since the agency determined that he had substance-abuse problems, more "specific" provisions, viz., R.C. 2151.414(E)(2) and (9), should have applied instead. This court disagrees.

{¶ 66} R.C. 2151.414 provides as follows:

{¶ 67} "(E) In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶ 68} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material

resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;

{¶ 69} "(2) Chronic mental illness, chronic emotional illness, * * * or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;

{¶ 70} " * * *

{¶ 71} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent."

{¶ 72} R.C. 1.51 provides that if a general provision *irreconcilably* conflicts with a special provision, the special provision prevails as an exception to the general provision. However, related sections of the Revised Code must be construed together. *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health,* 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 29.

{¶ 73} In cases of statutory construction, the "paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. To determine the intent, the reviewing court first examines the statutory language, reading words and phrases in context and construing them according to the rules of grammar and common usage. Id.

{¶ 74} R.C. 2151.414(E) obviously was intended to permit the juvenile court to examine the matter of whether an award of permanent custody is in the best interests of the child in the most comprehensive manner possible. When construed together, therefore, none of the provisions "irreconcilably conflicts" with another.

{¶ 75} Since the juvenile court in this case thus did not act improperly in applying the law to the facts presented, N.S.'s third assignment of error also is overruled.

{¶ 76} N.S. argues in his fourth assignment of error that his trial counsel provided ineffective assistance by failing to object to "inadmissible" evidence during the dispositional hearing. In particular, he asserts that Kunkler was "unqualified" to offer testimony about the children's medical needs and that Dvorak's testimony about N.S.'s drug-test results constituted hearsay.

{¶ 77} The two-part test for ineffective assistance of counsel used in criminal cases, as set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, applies equally in actions by the state to force the permanent, involuntary termination of parental rights. *Jones v. Lucas Cty. Children Servs. Bd.* (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471. The appellant first must show that counsel's performance was deficient. To meet that requirement, he must demonstrate that his counsel made errors so serious that counsel was not functioning as the "counsel" as guaranteed to a defendant by the Sixth Amendment of the United States Constitution. Id. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 78} In addition, the appellant must show that counsel's deficient performance prejudiced his case. In order to meet the second requirement, the appellant must demonstrate that counsel's errors were so serious as to render the result of the trial unreliable. Id. In effect, the appellant must show that there is a reasonable probability that but for counsel's errors, the result of the trial would have been different. Id. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 79} A review of the record in this case fails to support N.S.'s claim. Kunkler testified that she was an RN, and she had taken care of B.S. since his placement in her home when he was three days old. She knew from her own experience with him that he had a low birth weight, left-sided weakness, an asymmetrical body, and trouble breathing, that he is milk-intolerant, and that he is macrocephalic, which means that his "head is too large" for his body. Since Kunkler's testimony comported with Evid.R. 701, trial counsel had no reason to object to it.

{¶ 80} Similarly, Dvorak's testimony concerning the drug-test results was admissible pursuant to Evid.R. 803(6). Counsel is not deemed ineffective merely for failing to raise baseless objections.

{¶ 81} The record reflects that N.S.'s counsel represented his client in a diligent, competent manner. Accordingly, N.S.'s fourth assignment of error also is overruled.

{¶ 82} In App. No. 92880, D.S. presents the following assignments of error:

{¶ 83} "I. The trial court committed error when it failed to comply with the mandatory notice requirements of 25 U.S.C. 1912.

{¶ 84} "II. The trial court erred when it terminated Appellant's parental rights and granted permanent custody to [the agency].

{¶ 85} "III. Appellant was prejudiced when the trial court allowed two unrelated permanent custody cases to be heard simultaneously.

{¶ 86} "IV. Appellant was denied effective assistance of trial counsel."

{¶ 87} As his brother did in App. No. 92872, D.S. argues in his first assignment of error that the juvenile court was required to comply with and then to apply federal law before proceeding to determine custody of D.M. because D.M. has Native American heritage.

{¶ 88} For the same reasons as hereinbefore stated, since the record demonstrates that D.M. is not an "Indian child," D.S.'s argument lacks merit. Consequently, his first assignment of error is overruled.

{¶ 89} D.S. argues in his second assignment of error that the juvenile court's decision to terminate his parental rights is unsupported in the record. This argument is also rejected.

{¶ 90} The juvenile court found that at the time of the dispositional hearing, D.S. lacked stable housing, relied upon "SSI" as his income, refused to provide a hair sample for drug-testing purposes, and remained unable to meet D.M.'s extensive medical needs. The court additionally stated that placement with D.S. constituted a threat to the child's safety. R.C. 2151.414(E)(15).

{¶ 91} These findings are supported by D.S.'s comments at the pretrial conferences. In speaking with the court about the necessary steps required to have more access to D.M., D.S. demonstrated a remarkable lack of insight, an egocentric outlook, and a combative nature.

{¶ 92} Moreover, Davis testified that during D.M.'s last surgical recovery, D.S. became disruptive even prior to entering the child's room, then attempted to gain his sleeping son's attention by "bopping him on the head" continuously. Davis stated that D.S. ultimately had to be ejected from the hospital.

{¶ 93} Since the juvenile court's decision to terminate D.S.'s parental rights is based upon clear and convincing evidence presented in the record, D.S.'s second assignment of error also is overruled.

{¶ 94} In his third assignment of error, D.S. argues that the juvenile court erred in failing to bifurcate his son's case from B.S.'s after the paternity issue was resolved. This court notes that the same mother gave birth to both children, belying D.S.'s characterization of these cases as "unrelated." Nevertheless, D.S. never raised this issue in the juvenile court. Consequently, he has waived this argument for purposes of appeal. See, e.g., *In re Roberts*, Guernsey App. No. 04 CA 29, 2005-Ohio-2843, 2005 WL 1364611, ¶ 15.

{¶ 95} D.S. finally claims in his fourth assignment of error that his trial counsel rendered ineffective assistance. D.S. bases this claim on counsel's failure to call any witnesses and to raise objections to the testimony presented by the agency.

{¶ 96} As previously stated, in order to demonstrate his claim, N.S. first must show that his trial counsel's performance was deficient. *In re C.P.*, Franklin

App. No. 08AP–1128, 2009-Ohio-2760, 2009 WL 1653556, ¶ 57. This court presumes counsel's competency and will not second-guess matters of trial strategy. Id.

{¶ 97} The decisions to call witnesses and to raise objections clearly are matters of trial strategy. Id., ¶ 64. The record in this case shows that D.S.'s trial counsel thoroughly cross-examined the agency's witnesses and pointed out whatever weaknesses they displayed during their direct examinations.

{¶ 98} The record reflects that D.S.'s counsel was fully prepared for the proceeding, diligent in his efforts on his client's behalf, and represented D.S. in a highly competent manner. Because D.S. cannot demonstrate that his trial counsel rendered ineffective assistance, his fourth assignment of error also is overruled.

{¶ 99} App. No. 92872 is dismissed. In App. Nos. 92868, 92870, 92871, and 92880, the juvenile court's order is affirmed.

Judgment accordingly.

KILBANE and SWEENEY, JJ., concur.