[Cite as *In re K.G.*, 2020-Ohio-6744.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE K.G., ET AL. | : | |
| | : | No. 109590 |
| Minor Children | : | |
| | : | |
| [Appeal by Mother, D.G.] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 17, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD18904261 and AD18904262

---

*Appearances:*

Timothy R. Sterkel, *for appellant*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Rachel Matgouranis, Assistant Prosecuting Attorney, *for appellee.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Appellant D.G. (hereinafter referred to as "Mother") appeals the determination of the Juvenile Division of the Cuyahoga County Court of Common Pleas that it is in the best interest of her children K.G. and K.W. to be placed in the permanent custody of the Cuyahoga County Department of Children and Family

Services ("CCDCFS"). Mother asks that this court reverse the juvenile court's decision and remand for further proceedings.[1]

{¶ 2} As required by App.R. 11.1(D), this court has expedited the hearing and disposition of this appeal. We affirm.

## I. Background

{¶ 3} On March 29, 2018, CCDCFS filed a complaint that alleged K.G. and K.W. to be neglected children and moved for temporary custody of K.G. and K.W. based in part on Mother's lack of safe, stable housing, and substance abuse issues. CCDCFS moved for emergency predispositional temporary custody on April 16, 2018, when police found Mother passed out in her vehicle that was parked on railroad tracks with the children inside. Mother failed the field sobriety test. Three weeks prior to that incident, Mother crashed into a tree with the children in the vehicle but there was no police report. The agency learned of the incident when one of the children appeared at school with $230 provided by Mother in exchange for the child's secrecy about the crash and Mother's intoxication. The motion was granted at the emergency hearing the same date.

{¶ 4} The adjudication and disposition hearing was held on June 20, 2018. The children were adjudicated neglected and were committed to the temporary

---

[1] The older sibling of the children, who attained the age of 18 years old shortly after the permanency proceeding, was also committed to permanent custody during the proceedings. J.C. No. AD18902287. Pursuant to Mother's amended notice of appeal in this case, the instant challenge relates only to custody of the two younger children.

custody of CCDCFS. Mother was represented by counsel at all proceedings. The motion was amended on December 6, 2019, to add an alleged father of K.W.

{¶ 5} CCDCFS moved for permanent custody on February 11, 2019, and on April 2, 2019,[2] Mother was arraigned, advised of her legal rights, and executed a waiver of service. The matter was tried on February 4, 2020. Mother was represented by counsel, A.L., father of the elder child was represented by counsel and a guardian ad litem ("GAL"), L.R., alleged father of K.G., was represented by counsel, and the children were represented by counsel and a GAL. W.W., the father by affidavit of K.W., did not respond to or participate in any of the agency activities or court proceedings. Another individual, S.F., was identified as the potential biological father of K.W. immediately prior to the permanent custody trial but had not taken a paternity test.

{¶ 6} Social Worker Linda Yeldell ("Social Worker Yeldell") testified on behalf of CCDCFS. The children's GAL also addressed the court. The trial court determined that Mother and the fathers of the children were unable to care for the children, cited the facts underlying the determination, and acknowledged that no other interested person had filed or been identified in a motion for legal custody. The children desired to remain in the foster home where they have been happy and thriving. The case worker and GAL for the children recommended permanent custody and adoption, and the trial court granted permanent custody to CCDCFS.

---

[2] The transcript is erroneously dated April 12, 2019.

**{¶ 7}** Mother appeals.

## II. Assignments of Error

**{¶ 8}** Mother proffers the following assignment of errors:

I.   The trial court committed error when it failed to comply with the mandatory requirements of Juv.R. 37 and R.C. 2151.35.

II.  The trial court committed error when it proceeded with the permanent custody hearing without complying with 25 U.S.C. 1912.

III. The trial court committed error when it denied Appellant's request to continue.

IV.  The trial court committed error when it terminated Appellant's parental rights and granted permanent custody to CCDCFS.

## III. Discussion

### A. Juv.R. 37 and R.C. 2151.35

**{¶ 9}** Mother argues in the first assigned error that the trial court committed error when it failed to comply with the mandatory requirements of Juv.R. 37 and R.C. 2151.35.

**{¶ 10}** Juv.R. 37(A) provides in relevant part:

(A)  Record of proceedings.

The juvenile court shall make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases; permanent custody cases; and proceedings before magistrates. In all other proceedings governed by these rules, a record shall be made upon request of a party or upon motion of the court. The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device.

**{¶ 11}** R.C. 2151.35(A)(2) provides:

A record of all testimony and other oral proceedings in juvenile court shall be made in all proceedings that are held pursuant to section

2151.414 of the Revised Code or in which an order of disposition may be made pursuant to division (A)(4) of section 2151.353 of the Revised Code, and shall be made upon request in any other proceedings. The record shall be made as provided in section 2301.20 of the Revised Code.

{¶ 12} The record includes: (1) the April 16, 2018 transcript of proceedings on the complaint and emergency motion for predispositional temporary custody; (2) the June 20, 2018 adjudication and disposition hearing where the children were declared neglected and temporary emergency custody awarded to CCDCFS; (3) the April 12, 2019 proceedings to advise Mother of her constitutional rights and to ensure Mother's understanding of the motion to modify temporary custody to permanent custody; and (4) the February 5, 2020 permanent custody proceedings.

{¶ 13} The complete transcripts for the adjudicatory and dispositional proceedings are in the record. "Neither Juv.R. 37 nor R.C. 2151.35 make any mention of recording pretrials or scheduling conferences." *In re D.H.*, 177 Ohio App.3d 246, 2008-Ohio-3686, 894 N.E.2d 364, ¶ 53 (8th Dist.).

{¶ 14} The first assignment of error is overruled.

**B. 25 U.S.C. 1912**

{¶ 15} Mother argues that the trial court failed to comply with the Indian Child Welfare Act ("ICWA"), 25 U.S.C. 1912.

In order to invoke the provisions of the ICWA, there must be a preliminary showing that a custody proceeding involves an "Indian child." *In re Williams*, 9th Dist. [Summit] Nos. 20773 and 20786, 2002-Ohio-321, ¶ 22. An "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. 1903(4). The party who asserts the applicability of the ICWA bears the

burden of proving that a child meets the statutory definition of an "Indian child." Williams at ¶ 22. To meet this burden, the party asserting the applicability of the ICWA must do more than raise the possibility that a child has Native American ancestry. *See In re B.S.*, 184 Ohio App.3d 463, 2009-Ohio-5497, 921 N.E.2d 320, ¶ 63 (8th Dist).

*In re: A.C.*, 8th Dist. Cuyahoga No. 99057, 2013-Ohio-1802, ¶ 41.

{¶ 16} The record reflects multiple inquiries by the trial court.

Court:      And since you've had the case has mother reported any Native American ancestry for herself of the children?

Agency:     No.

Court:      Have you discovered any Native American ancestry for either of the fathers?

Agency:     No.

(Tr. 15-16.)

{¶ 17} CCDCFS also addressed ICWA during direct examination of the CCDCFS intake and extended social workers respectively:

Counsel:    Have any of the parents reported any Native American Ancestry?

Witness:    No.

Counsel:    For themselves or the children?

Witness:    No.

Counsel:    Have they been asked?

Witness:    In the staffing they were asked.

Counsel:    And what did they say?

Witness:    No.

* * *

Counsel: Have you learned through the course of your investigation whether any of the parents have Native American Ancestry?

Witness: No.

(Tr. 13, 36.)

{¶ 18} As further clarification, the trial court inquired:

Court: [Counsel for Mother], just so the record's clear, does your client have any Native American Ancestry?

Counsel: No, your honor.

(Tr. 42.)

{¶ 19} The trial court asked Mother directly at the April 2, 2019 hearing:

Court: Okay. And final question, to the best of your knowledge do you or your children have any Native American ancestry?

Mother: No.

(Tr. 8.)

{¶ 20} Finally, the trial court's journal entry and findings of fact for permanent custody of each child provides that "the child is not a member of a federally recognized Indian tribe, and is not in the custody of an Indian custodian." Journal entry Nos. 0913175575 and 0913175557, pg. 3 (Feb. 18, 2020).

{¶ 21} The second assigned error is overruled.

## C. Continuance

{¶ 22} Mother also cites as error the trial court's refusal to continue the trial due to the alleged delivery of approximately 400 plus pages of discovery the day before trial. We do not find error here.

**{¶ 23}** Absent an abuse of discretion, a trial court's determination of whether to grant a continuance is not subject to reversal. *In re K.D.*, 8th Dist. Cuyahoga No. 81843, 2003-Ohio-1847, ¶ 10. An abuse of discretion equates to an unreasonable, arbitrary, or unconscionable decision. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 24}** Also,

> [U]nder Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." In addition, Loc.R. 35(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division, provides:
>
> No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

*In re A.W.*, 8th Dist. Cuyahoga No. 109239, 2020-Ohio-3373, ¶ 28.

**{¶ 25}** The trial court thoroughly addressed this matter on the record. A review of that record reveals that approximately 250 pages were erroneously provided to Mother but were actually related to the eldest child's father's inability to care for that child. Provision of the documents was delayed due to the father's refusal to sign a release.

**{¶ 26}** Counsel for CCDCFS explained that the remaining documents were duplicates of Mother's treatment and counseling records that were originally delivered in October:

With regards to the discovery, [Mother's counsel] was provided with Mother's most recent treatment records in October.

I subsequently subpoenaed those records to see if she had re-engaged, if there was anything additional, and they sent me the same exact records again except with a certification page saying these are the records from them.

I decided, although they were the exact same records that were already provided, that I would drag those in and do it as one account just so that — * * *

I would provide the children discovery just in case I decided to submit the ones with the updated certification page as an exhibit instead of the other ones.

He was provided with all of the records in October for Mother's treatment. * * *

 I explained to him yesterday and I pulled it up and showed him that it is the same records.

In fact, I believe there's been no new things that (inaudible) I think it was 2018.

 I explained that to him.  He seemed to understand at the time that these were just updated and that he has had these records for months.

(Tr.  9-10.)

{¶ 27} CCDCFS added that several pages of recent activity logs were provided but denied Mother's claim that the agency had an ongoing obligation to supplement discovery.  Mother last requested discovery in April 2018, and the agency voluntarily updated the information "multiple times."  (Tr. 11.)

I was reviewing updated activity logs myself for preparation for trial and out of courtesy I took the time to redact and send them to him.

He was not entitled to those documents. There has been no discovery request, but I provided them recently as I was presenting them out of courtesy.

(Tr. 12.)

**{¶ 28}** CCDCFS is correct. "[T]here is no requirement that disclosures or witness lists be updated pursuant to Juv.R. 24." *In re J.L.*, 8th Dist. Cuyahoga No. 84368, 2004-Ohio-6024, ¶ 25. In fact, "'[a]bsent a motion to compel, the trial court in juvenile proceedings does not abuse its discretion in admitting evidence not previously disclosed by the state.'" *Id.*, quoting *In re Gilbert*, 12th Dist. Butler No. CA86-10-144, 1987 Ohio App. LEXIS 8876, at *11 (Sept. 28, 1987).

**{¶ 29}** In additional support for the continuance claim, Mother argued that an alleged blood relative had recently come forward though no motion regarding the purported relative was before the trial court. In fact, the existence of the individual came to light on January 22, 2020, just days before trial. The trial court advised that "all proceedings" do not stop "because at the last minute somebody found somebody who could be a custodian?" (Tr. 24.) In addition, CCDCFS stated that the individual, if eligible, would only be considered for custody of the eldest child.

**{¶ 30}** Mother also offered that the defense had "relaxed preparation" for the trial by "[n]ot going through all those documents" because the defense understood that the proceedings were only going to move forward regarding the older sibling. (Tr. 23.) Counsel for CCDCFS explained that Mother's counsel inquired about the agency moving forward at trial for the elder sibling who would attain the age of eighteen years old approximately two weeks after the scheduled trial. Counsel was advised that permission for a continuance for any of the children required approval of the agency. CCDCFS declined.

{¶ 31} CCDCFS counsel expounded that the cited discussion had just occurred the previous afternoon:

> It's not like I cut off his ability to prepare for trial for months thinking — I mean, this is just affecting a few-hour window the day before trial, so it shouldn't have had any effect on whether he could relax his preparation.

(Tr. 26-27.) The trial court ruled. "Okay. I have heard enough. The motion for continuance is denied. We will go forward on all three [children]." (Tr. 27.)

{¶ 32} We do not find that the trial court abused its discretion.

{¶ 33} The third assigned error is overruled.

## D. Permanent Custody Award

{¶ 34} Parents have a constitutionally protected, fundamental interest in the management, custody, and care of their children. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). "We recognize, however, that termination of parental rights is 'the family law equivalent of the death penalty in a criminal case.'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶ 35} A parent's right to raise a child is not absolute and it is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 36} CCDCFS filed for permanent custody on the ground that the children have been neglected. A neglected child is one "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian."

R.C. 2151.03(A)(2). Under R.C. 2151.03(A)(3), a neglected child is one "[w]hose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well-being." R.C. 2151.03(A)(3).

{¶ 37} R.C. 2151.353(A)(4) authorizes a trial court to grant permanent custody to an agency where a child has been adjudicated neglected, dependent, or abused. The trial court must determine by clear and convincing evidence that: (1) "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" pursuant to R.C. 2151.414(E); and (2) "permanent commitment is in the best interest of the child" pursuant to R.C. 2151.414(D)(1). R.C. 2151.353(A)(4).

## 1. Standard of Review

{¶ 38} To terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following: (1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e); and (2) permanent custody is in the best interest of the child. *In re S.H.*, 8th Dist. Cuyahoga Nos. 97992, 97993, and 97994, 2012-Ohio-4064, ¶ 27. "Clear and convincing evidence" is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established. *In re Y.V.*, 8th Dist. Cuyahoga No. 96061, 2011-Ohio-2409, ¶ 13, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 39} When determining the child's best interest pursuant to R.C. 2151.414(D)(1), courts analyze the following factors: (1) the interaction and interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

{¶ 40} Also,

> [a] juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence."

*In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 62, quoting *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 41} The "best interest determination" focuses on the child, not the parent. R.C. 2151.414(C); *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994). The discretion that the juvenile court enjoys in deciding whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's decision will have on the lives of the parties concerned. *Id.* at 316.

{¶ 42} Thus, we review "a trial court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 52, citing *In re L.O.*, 8th Dist.

Cuyahoga No. 101805, 2015-Ohio-1458, ¶ 22. "An abuse of discretion implies that the court's decision was unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### 2. Discussion and Analysis

{¶ 43} Mother argues that the custody award is in error because Mother satisfied the case plan objectives. Social Worker Yeldell was the sole agency witness at the permanency hearing. A number of certified exhibits that documented pertinent facts were admitted and are not challenged here.

{¶ 44} Social Worker Yeldell was assigned to the case in March 2018. The agency received a report in January 2018, that Mother refused to take the elder sibling home from the Juvenile Detention Center, and that the younger children had been seen begging for money and were not being provided for. The agency had concerns about the housing and Mother's substance abuse as well as the danger posed to the children during Mother's two automobile accidents.

{¶ 45} A case plan was formulated with the initial goal of reunification. Mother was required to meet substance abuse, housing, parenting practice, and mental health objectives. The substance abuse issues involved alcohol, cocaine, and marijuana.

{¶ 46} Mother failed to complete the intensive outpatient program treatment plan. Intake occurred on March 29, 2018, and discharge on October 1, 2018. Mother continued to test positive for marijuana, alcohol, and cocaine during the treatment period.

{¶ 47} Mother was reassessed in April 2019 and referred for inpatient treatment. Mother informed the inpatient agency that she had been using alcohol and drugs for 20 years and was diagnosed with severe alcohol, severe cannabis, and cocaine disorder. Mother refused to participate in the program "because she wanted to work." (Tr. 40.) Mother was next referred for partial hospital treatment but also failed to complete the program and continued to test positive.

{¶ 48} In December 2019, Mother gave birth to another child. Mother abused substances throughout the pregnancy and custody of the infant was pending in a separate action.

{¶ 49} Mother was assessed by the mental health counseling service in August 2018. The provider recommended psychotherapy for Mother's moods, relationship issues, unresolved trauma, and to build self-coping skills. A medication management assessment was also recommended. Mother did not comply with either recommendation.

{¶ 50} Mother was referred to, and completed, parenting services. The agency opined that Mother did not benefit from the services and questioned Mother's decision-making as exemplified by Mother's decision to engage in substance abuse through her pregnancy and childbirth.

{¶ 51} The house where Mother previously resided with the children burned down while she and the children were present. As of the trial date, Mother had not secured housing for the children and was residing with the father of the newborn

who was convicted of assaulting Mother during the pregnancy. Mother visits with the children under supervision due to the ongoing positive substance abuse tests.

{¶ 52} The children have been placed together in a two-parent foster home where they are thriving, doing well in school, and participating in school activities. The couple is willing to adopt the children and two more foster children recently joined the family. Based on Social Worker Yeldell's personal observations, the children and foster parents have a close bond and attend to the children's needs. The children have not expressed a desire to return to Mother.

{¶ 53} Social Worker Yeldell acknowledged during cross-examination that Mother stated that she completed a substance abuse program, parenting program, and mental health counseling. Only the parenting class is documented, a fact already acknowledged by the agency.

{¶ 54} Social Worker Yeldell recommended that permanent custody is in the best interest of the children. The fathers are unable to care for the children and Mother is unable to remain sober or provide safe housing.

{¶ 55} The GAL for the children testified that permanent custody is in the best interest of the children. The children have been in what is their third foster home for 18 months and are comfortable and doing well.

{¶ 56} The evidence establishes for the "best interest" purposes of R.C. 2151.414(D)(1), that the children have bonded with the foster family and siblings and have resided with the family for 18 months. R.C. 2151.414(D)(1)(a). The

agency and GAL advised that the children did not express a desire to reunify with Mother and recommended permanent custody. R.C. 2151.414(D)(1)(b).

{¶ 57} The trial court further found that the children have not been in the custody of a public children services agency or private child placement agency under one or more separate orders of disposition for 12 or more months of a consecutive 22-month period. R.C. 2151.414(D)(1)(c). Journal entry Nos. 0913175575 and 0913175557, p. 3 (Feb. 18, 2020). In addition, the trial court determined that the children could not be placed with Mother and required a legally secure placement that could be accomplished without a grant of permanent custody. R.C. 2151.414(D)(1)(d).

{¶ 58} The trial court found that the children are not Native American for purposes of ICWA. In addition, the trial court approved the permanency plan for permanent custody and adoption and rejected the concurrent plan for reunification.

{¶ 59} The trial court also held that R.C. 2151.414(E)(1), (2), and (4) factors apply. "[T]he parent has failed to remedy the problems that initially caused the child[ren] to be placed outside the home." R.C. 2151.414(E)(1). "[T]he parent has failed continuously and repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside the child[ren]'s home." *Id. See* Journal entry Nos. 0913175575 and 0913175557, p. 3 (Feb. 18, 2020).

{¶ 60} The trial court also found that Mother's "chronic mental illness, intellectual disability, physical disability, or chemical dependency" "is so severe that it makes the parent unable to provide an adequate permanent home for the

child[ren] at the present time and, as anticipated, within one year." R.C. 2151.414(E)(2). *See* Journal entry Nos. 0913175575 and 0913175557, p. 3 (Feb. 18, 2020).

{¶ 61} In support of R.C. 2151.414(E)(4), the trial court determined that Mother

> has demonstrated a lack of commitment toward the child[ren] by failing to regularly, support, visit, or communicate with the child[ren] when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[ren].

Journal entry Nos. 0913175575 and 0913175557, p. 3 (Feb. 18, 2020).

{¶ 62} After a thorough review of the record, we agree with the trial court's conclusion that the allegations of the motion are supported by clear and convincing evidence and that permanent custody is in the best interest of the children.

{¶ 63} Mother's fourth assignment of error is overruled.

## IV. Conclusion

{¶ 64} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
MICHELLE J. SHEEHAN, J., CONCUR