JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, D.G., the child's natural father, appeals the decision of the lower court granting permanent custody to the Cuyahoga County Department of *Page 2 
Children and Family Services ("CCDCFS" or "Agency"). Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} According to the case, CCDCFS filed a complaint alleging neglect and requesting a disposition for temporary custody. An adjudicatory hearing was held on February 10, 2005, and after amendments to the complaint and admissions by the child's mother, the lower court adjudged the child to be neglected. Appellant was properly served but did not attend the hearing. The court's order committing the child to the temporary custody of CCDCFS was journalized and mailed to the parties on February 15, 2005. A review hearing was scheduled for August 30, 2005.
 {¶ 3} Prior to the August 30, 2005 review hearing, CCDCFS filed a motion requesting a first extension of temporary custody. Both parents failed to appear for this hearing. The trial court extended temporary custody for six months and scheduled a review hearing for March 2006. A second extension of temporary custody was filed, and a hearing was scheduled for March 14, 2006. Although the child's mother was absent, appellant made his first appearance. Appellant was informed of his rights and agreed, along with the other parties, that a second extension of temporary custody was in the child's best interest.
 {¶ 4} On July 14, 2006, CCDCFS filed a motion to modify temporary custody to permanent custody. The child had been in substitute care for over a year and a *Page 3 
half. At a preliminary hearing on September 12, 2006, attorney Michael Granito was appointed to represent appellant. Another preliminary hearing was held on October 24, 2006, and the court issued specific orders for appellant to participate in a drug and alcohol assessment and to follow the recommendations. Appellant failed to appear at the next hearing, and appellant's counsel moved for a continuance. Appellant's attorney also requested that the court perform an in camera interview of the child. Both of these motions were granted and the matter was set for trial. Appellant's counsel was informed that no further continuances would be granted.
 {¶ 5} At the next hearing, on July 24, 2007, the child's biological mother and father appeared. Due to the fact that the mother's last appearance in court had been in February 2005, she had never been notified of the motion for permanent custody. Therefore, the court updated her on the status of the case, appointed her counsel, and reset the matter for trial. The parties were informed that no further continuances would be granted, and each party signed and received a copy of the hearing notice for August 7, 2007.
 {¶ 6} On the day of trial, assistant prosecuting attorney Cheryl Rice, appellant's counsel Michael Granito, guardian ad litem Tyrone Fazio, CCDCFS social worker Scott Kallach, the foster parent, the daughter of the foster parent, and Melissa Brinkoff, an interested individual, were present. *Page 4 
 {¶ 7} After hearing testimony, receiving the GAL's report and recommendations, considering the child's wishes, and considering the statutory factors for permanent custody, the court concluded that the child could not be placed with either parent within a reasonable time, and that an order granting permanent custody to CCDCFS was in the child's best interest. Appellant now appeals the lower court's ruling.
 {¶ 8} An initial case plan in this case was filed on October 5, 2004, with an amendment to the plan being filed on August 25, 2005. Case plan objectives for appellant concerned substance abuse, stable housing, and basic needs. After a substance abuse assessment, appellant entered an intensive outpatient treatment program at Fresh Start. However, appellant was discharged from the program for excessive absence and refusing to follow treatment guidelines. Eventually, the Agency referred appellant for treatment again, which despite sporadic attendance, was successfully completed this time. However, appellant failed to participate in aftercare. As a result, appellant failed to satisfy the case plan objectives relating to substance abuse.
 {¶ 9} Appellant's housing was another area of concern, as it related to appellant's ability to meet the child's basic needs. The social worker testified that appellant held a month-to-month lease on a one-bedroom apartment where he had lived for approximately eight months. The social worker described the apartment to *Page 5 
be in deplorable condition, malodorous, and furnished with only a couch and a bed. At the time of the social worker's inspection of the dwelling, two large pit bulls occupied the couch. Appellant indicated that in the event he regained custody of the child, he planned to sleep on the couch and let the child sleep in his bed. Appellant was aware of the fact that before reunification could occur he had to demonstrate the ability to provide a safe and stable environment for the child. However, appellant's housing remained inappropriate, and he refused to take the required steps to remedy the situation.
 {¶ 10} In addition to problems with substance abuse and stable housing, appellant was financially unable to meet the child's basic needs. Appellant's employment history is unstable. Appellant asserts that he received income from doing odd jobs for his roommate. However, appellant refused to provide the Agency with any proof of income. The social worker testified that appellant remained unemployed throughout the pendency of this case. The social worker also noted that appellant received public assistance in the form of food stamps.
 {¶ 11} In addition, appellant failed to visit the child on a regular basis. Appellant did not visit or communicate with the child from September 2004 to March 2005. In addition, when the child was previously in the Agency's custody, appellant failed to visit him from December 1999 through June 2001. When appellant did visit the child, his disheveled appearance and odd behavior gave rise to concerns about *Page 6 
his sobriety. There was testimony that, in one instance, appellant was not permitted to enter the visitation center because he smelled of alcohol and appeared to be intoxicated.
 {¶ 12} Although the child seemed to have affection for his father and enjoy his company, he did not believe that his father could provide him with the care that he needed. It was not only the child who expressed concern; appellant also voiced doubts as to his ability to provide for the child.[1] Neither birth parent was able to provide a secure and stable home for the child, and none of the family members were willing to assume custody of the child.
 {¶ 13} In addition, the guardian ad litem stated that permanent custody was in the child's best interest, and the child's wishes were consistent with the guardian ad litem's recommendation. During his in camera interview, the child informed the court that he wanted to be adopted.[2]
 II. {¶ 14} Appellant's first assignment of error provides the following: "[Appellant] was denied of his right to counsel by the trial court during court hearings held in this matter." *Page 7 
 {¶ 15} Appellant's second assignment of error provides the following: "Appellant was denied of his right to effective assistance of counsel by the failure to object to procedural defects concerning the orders of the trial court."
 {¶ 16} Appellant's third assignment of error provides the following: "The trial court's decision granting permanent custody of the child was contrary to the best interest of the child and against the manifest weight of the evidence."
 III. {¶ 17} Appellant argues in his first assignment of error that the lower court denied him of his right to counsel. Specifically, appellant argues that he expressly requested that he have an attorney to represent him. Appellant points to pages five and six of the March 14, 2006 transcript for support. A review of the record demonstrates that, contrary to appellant's contention, the trial court's actions were proper.
 "THE COURT: So we have a motion pending to extend temporary custody. Do you want to be represented on that motion? Do you want an attorney to represent you? You have the right to have that. You have the right to have the court appoint an attorney for you if you can't afford one and you have the right for a continuance to obtain counsel.
 MR. [G]: Well, I think I'm going to need an attorney.
 THE COURT: Okay. So — And you want an attorney before we decide if the child stays in temporary custody for another six months?
 MR. [G]: Yeah. I think — yeah. *Page 8 
 MR. FAZIO: Your Honor, would you like me to talk to him briefly just so I can determine if he really understands.
 THE COURT: Sure. That would be fine.
 MR. FAZIO: Would that be okay Mr. [G]? I'm Ty Fazio, the guardian."
 (Break in recording.)
 THE COURT: We are back on the record now. What were you going to say, Mr. Fazio?
 MR. FAZIO: Your Honor, I had the opportunity to speak with Mr. [G] and I explained to him that my position as a guardian ad litem. And I wasn't trying to give him legal advice, although I was the attorney and the guardian for the child.
 He indicated to me that he's aware of the proceedings. His concern is that he's doing his visits and he wants to be considered and work whatever case plan requirements are required of him. And he understands the child is in a safe place right now. He doesn't want that interfered.
 And he understands he's going to need to show the court that he has the ability to take care of the child in the event the mother doesn't complete her plan.
 I think he understands that his rights wouldn't be affected by going forward today and he can always request the court to appoint counsel down the road if the case requires it.
 The caseworker indicates to me that he is working with the father to have a back-up plan here in the event that mom is not doing what's required of her.
 THE COURT: Is that correct, Mr. [G]? You are willing to go forward today?
 MR. [G]: Yes, it is. *Page 9 
 THE COURT: Okay. Then let's deal with this issue of the motion to extend temporary custody. Where are we?"[3] (Emphasis added.)
 {¶ 18} The evidence demonstrates that appellant understood what was transpiring in the hearing. Fazio stated what he thought appellant's understanding was on the record. After Fazio's statement, the trial court double-checked with appellant and asked him, "Is that correct, Mr. [G]? You willing to go forward today?" Appellant agreed and stated, "Yes, it is." The record demonstrates that, contrary to appellant's claim, he was not denied his right to counsel, and the trial court did not err.
 {¶ 19} In addition, appellant argues in his first assignment of error that the case plan was filed late and consequently CCDCFS violated the law. Specifically, appellant argues that the complaint was filed on December 7, 2004, and the case plan was filed on August 25, 2005, nine months late.
 {¶ 20} However, a review of the record demonstrates that the initial case plan was filed on October 5, 2004. The transcript of docket entries merely does not list entries filed prior to the complaint. Appellant could have learned of this fact in a couple of different ways. First, a review of the birth mother's motion to show compliance with case plan, filed on February 2, 2005, would have revealed an explicit relation to the original case plan filed on October 5, 2004. Second, appellant *Page 10 
could have inspected the August 25, 2005 case plan and learned that it was an amendment, and is clearly designed as such by its bold-type heading, "Amended Case Plan Cover Sheet."[4]
 {¶ 21} Accordingly, appellant's first assignment of error is overruled.
 {¶ 22} Appellant argues in his second assignment of error that he was denied his right to effective assistance of counsel by counsel's failure to object to procedural defects.
 {¶ 23} In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, the dual prongs of the test set forth in Strickland v. Washington (1984), 466 U.S. 668, must be satisfied. A defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel," as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive him of a fair and reliable trial. Id. at 687.
 {¶ 24} The Ohio Supreme Court set forth a similar two-part test:
 "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Bradley (1989), 42 Ohio St.3d 136, 141-142. *Page 11 
 {¶ 25} Because there are countless ways to provide effective assistance in any given case, the scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, supra; accord State v. Bradley, supra. In sum, it must be proven that counsel's performance fell below an objective standard of reasonable representation, and that prejudice arose from his performance. Id.
 {¶ 26} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, "scrutiny of counsel's performance must be highly deferential * * *," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."Strickland, supra, at 689.
 {¶ 27} Appellant argues in his brief that counsel failed to object to procedural defects that stemmed from the original order of temporary custody. However, as previously mentioned above, there were no procedural defects associated with the February 10, 2005 adjudicatory and dispositional hearings, or with the March 14, 2006 motion hearing. *Page 12 
 {¶ 28} Moreover, we find nothing in the record to demonstrate ineffective assistance of counsel on the part of appellant's trial counsel. The conduct in this case did not constitute a substantial violation of any of defense counsel's essential duties to the client. Furthermore, we find that the record demonstrates that appellant was not prejudiced by counsel.
 {¶ 29} Appellant's second assignment of error is overruled.
 {¶ 30} Appellant argues in his third assignment of error that the trial court's decision granting permanent custody of the child was contrary to the best interest of the child and against the manifest weight of the evidence.
 {¶ 31} A claim that the court's finding is against the manifest weight of the evidence requires us to examine the evidence and determine whether the trier of fact clearly lost its way. In re: M.W., Cuyahoga App. No. 83390, 2005-Ohio-1302. There is a presumption that the trial court's factual findings are correct, because the trial court is in a better position to judge the credibility of the witnesses. Id.
 {¶ 32} In order to terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a)-(d) and that permanent custody is in the best interest of the child by considering the five factors set forth in R.C.2151.414(D). Clear and convincing evidence is that quantum of evidence which instills in the trier of fact a firm belief or conviction as to the *Page 13 
allegations sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, 477, 120 N.E.2d 118. Our review of the weight of the evidence in a permanent custody case is limited to whether competent, credible evidence exists to support the trial court's factual determinations.In re Starkey, 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d 665.
 {¶ 33} When determining the best interest of the child, the court is required to consider all relevant factors listed in R.C. 2151.414(D). This court has found that only one of the enumerated factors needs to be resolved in favor of the award of permanent custody. In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942, citing In re Shaeffer Children
(1993), 85 Ohio App.3d 683, 621 N.E.2d 426; see, also, In re M.Z., Cuyahoga App. No. 80799, 2002-Ohio-6634; In re Legg, Cuyahoga App. Nos. 80542 and 80543, 2002-Ohio-4582.
 {¶ 34} Contrary to appellant's argument, sufficient evidence was presented at the hearing for the court to properly consider the child's custodial history and determine whether the child had been in temporary custody of the Agency for twelve or more months of a consecutive twenty-two month period.
 {¶ 35} The minor child, T.G., was initially removed from the home on May 18, 1999. After returning to appellant's custody on August 9, 1999, the child was again removed four months later. This time T.G. was in custody from December 13, 1999 to June 12, 2001. On September 6, 2004, the child's mother was charged with *Page 14 
public intoxication and child endangering. T.G. was brought to CCDCFS by the Cleveland police and has been in the Agency's custody ever since. CCDCFS filed a motion to modify temporary custody to permanent custody on July 14, 2006. At that time, the child had been in the Agency's custody for one year, ten months, and nine days, well in excess of twelve months of a consecutive twenty-two month period, thereby satisfying the first requirement for permanent custody pursuant to R.C.2151.414(B)(1). In addition, the lower court determined that the child could not be placed with the child's parents within a reasonable time or should not be placed with either parent.
 {¶ 36} Under R.C. 2151.414(D)(1), the trial court is to consider the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may have significantly affected the child.
 {¶ 37} In the case at bar, appellant failed to visit or communicate with the child from September 2004 to March 2005. Appellant also failed to visit the child from December 1999 to June 2001, when the child was previously in custody. Appellant failed to make a court appearance until March 2006, despite proper notice. Appellant did not attend the August 7, 2007 hearing to contest the termination of his parental rights. Interaction between appellant and the child resembled a peer relationship rather than a parent-child relationship. Appellant's conduct at visits was *Page 15 
described as not age-appropriate, and his disheveled appearance and unusual behavior raised concerns regarding his sobriety. Appellant was turned away from a visit because he arrived smelling of alcohol and appeared intoxicated.
 {¶ 38} Although T.G. seemed to have affection for his father, he does not believe that he can take care of him. T.G.'s mother refused to cooperate with the Agency or assigned counsel and failed to appear at the permanent custody hearing. No relatives came forward to express interest in gaining custody of the child. T.G. is currently doing well in his adoptive environment. He is in a safe and stable environment where all of his needs are being met. The foster mother and her daughter have expressed an interest in adopting T.G.
 {¶ 39} Under R.C. 2151.414(D)(2) the court is to consider the wishes of the child as expressed directly by the child or through the child's guardian ad litem with due regard for the child's maturity. The guardian ad litem reported that the child wants permanency in his life and hopes that his foster mother will be able to adopt him. Based on the evidence, the guardian ad litem recommended that the trial court grant the Agency's motion to modify temporary custody to permanent custody. An in camera interview was held. During the interview, T.G. communicated that he wants to be adopted by his foster mother or her daughter, even if that means he would never see his biological parents again. *Page 16 
 {¶ 40} Under R.C. 2151.414(D)(3) the court is to consider the custodial history of the child, including whether the child has been in temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period. As previously stated, the child had been in the Agency's custody for over one year, ten months and nine days, thereby satisfying the requirement of at least twelve months of a consecutive twenty-two month period.
 {¶ 41} Under R.C. 2151(D)(4) the court is to consider the child's need for a legally secure placement and whether such a placement can be achieved without a grant of permanent custody to the agency. In this case, the evidence demonstrated, and the lower court found, clear and convincing evidence of four separate factors under R.C. 2151.414(E):
 "Following the placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. * * *" R.C. 2151.414(E)(1).
 "The chronic chemical dependency of the parents is so severe that it makes the parents unable to provide an adequate permanent home for the child at the present time and as anticipated within one year. * * *" R.C. 2151.414(E)(2).
 "The parents have demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when *Page 17 
able to do so, or by other actions show an unwillingness to provide an adequate permanent home for the child." R.C. 2151.414(E)(4).
 "The parents, for any reason, are unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse, or physical, emotional, or mental neglect." R.C. 2151.414(E)(14).
 {¶ 42} The existence of a single factor under R.C. 2151.414(E) requires a finding that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In this case, four factors were found, and legal custody was not an alternative because no one came forward to file a motion for legal custody or expressed an interest in custody for the child. Planned permanent living arrangement was not considered because the case did not meet the requirements set forth under R.C. 2151.415(C). Extension of temporary custody was not possible because the court had already granted the statutory maximum of two six-month extensions. R.C. 2151.415(D)(4).
 {¶ 43} Accordingly, the evidence demonstrates that the lower court satisfied all statutory requirements for permanent custody. We find that the trial court considered all relevant factors and properly determined that permanent custody was in the child's best interest.
 {¶ 44} Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 18 
It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., JUDGE
JAMES J. SWEENEY, A.J., and MARY J. BOYLE, J., CONCUR
[1] Tr. 45-46.
[2] Tr. 60.
[3] Mar. 14, 2006 Tr. 5-7.
[4] Appellee's brief, Ex. A. *Page 1