[Cite as *In re B.M.*, 2011-Ohio-5176.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96214

# IN RE: B.M.

# (A Minor Child)

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Juvenile Court Division
Case No. AD 10900242

BEFORE: E. Gallagher, J., Blackmon, P.J., and Sweeney, J.

RELEASED AND JOURNALIZED: October 6, 2011

**ATTORNEY FOR APPELLANT,**
**MOTHER,   C.M.**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio   44103-1125


**ATTORNEYS FOR APPELLEE,**
**C.C.D.C.F.S.**

William D. Mason
Cuyahoga County Prosecutor

By:   Michelle A. Myers
Assistant County Prosecutor
3955 Euclid Avenue, Rm. 313E
Cleveland, Ohio   44115

**GUARDIAN AD LITEM FOR CHILD**

Amy Nash
1180 Winston Road
South Euclid, Ohio   44121



EILEEN A. GALLAGHER, J.:

{¶ 1} C.M. ("mother") appeals from the decision of the trial court granting permanent custody of B.M. to the Cuyahoga County Department of Children and Family Services ("CCDCFS").   C.M. argues that her trial counsel rendered ineffective assistance, that the trial court erred when it did not issue an order within two hundred days of the filing

of the motion for permanent custody, that the trial court did not make a finding that the evidence provided was clear and convincing, that the court erred in not fully addressing the five best interest factors in its journal entry, and that the judgment was against the manifest weight of the evidence. Finding no merit to this appeal, we affirm the judgment of the trial court.

{¶ 2} C.M. gave birth to B.M. on January 8, 2010. At the time of her birth, both B.M. and her mother tested positive for cocaine. C.M. had used drugs throughout her pregnancy and tested positive on December 17, 2009 and December 25, 2009. As a result of the positive drug test, CCDCFS investigated the situation. Throughout the course of its investigation, the department learned that the mother had a decades long history of cocaine use, which had previously led to the removal of four older children from her care, two of them permanently. Based on C.M.'s drug history and the concern of CCDCFS in regards to the mother's ability to provide for B.M., the department requested and was granted, a telephonic order of removal of the child on January 10, 2010.

{¶ 3} On January 11, 2010, CCDCFS filed a complaint alleging B.M. to be an abused and dependent child and requested a disposition of permanent custody. The department sought a concurrent plan both for attempted reunification of C.M. with her child and, should C.M. fail to comply with services and address the issues causing B.M.'s removal,

a plan for permanent custody.[1]   That same day, the trial court conducted a hearing on the department's motion.   C.M. appeared and stipulated to B.M.'s emergency,  temporary custodial commitment to CCDCFS.   The trial court also referred C.M. to its Family Treatment Drug Court program.

{¶ 4}   In an attempt to assist C.M. with reunification, CCDCFS developed a case plan that initially included objectives for housing and substance abuse and later, a domestic violence objective.   In order to assist C.M. to address her chronic cocaine addiction, CCDCFS intake social worker Tammy Lebron referred C.M. for a substance abuse assessment.   C.M. completed the assessment and the department referred her for residential treatment at Hitchcock Center For Women.   C.M. entered the program on January 14, 2010.

{¶ 5}   On February 3, 2010, C.M. appeared in court with counsel.   The trial court arraigned C.M. and accepted her into its drug court program.   At that time, C.M. executed a waiver of the 90 day statutory time requirement, a waiver of service, and signed a notice of the adjudicatory hearing scheduled for March 31, 2010.   On February 6, 2010, the Hitchcock Women's Center discharged C.M., unsuccessfully, after she got into an argument with another client at the facility.   The intake social worker met with C.M. and attempted to

---

[1]The department recommended the concurrent plan based on C.M.'s lengthy substance abuse history and the department's removal of all four of her older children.

re-engage her in treatment but C.M. refused to comply.

{¶ 6} On March 31, 2010, C.M. failed to appear for the adjudicatory hearing. Counsel requested, and received a continuance of the hearing to allow C.M. more time and an opportunity to attend. Nonetheless, the trial court discharged C.M. from its drug court program and continued the matter for adjudication on May 4, 2010.

{¶ 7} Around that same time, CCDCFS transferred B.M.'s case to an ongoing social worker, Shelley Woods-Ferguson. The department's concurrent plans remained in effect and Woods-Ferguson repeatedly tried to contact C.M. to engage her in services to address her substance abuse and housing issues. In an attempt to locate C.M., Woods-Ferguson called a relative, with whom she had previously lived and left several messages for C.M. to contact her; she made approximately twelve attempts to locate C.M. at her last known address, leaving letters and cards for C.M.; and she also consulted with a colleague at the department who had been receiving phone calls from C.M. C.M. had left numbers with the staff member and Woods-Ferguson made several attempts to contact C.M. through those numbers. Despite all of the above, Woods-Ferguson had no contact with C.M. from the time she received the case at the beginning of March until October 4, 2010, when C.M. walked into CCDCFS' offices and asked for Woods-Ferguson.

{¶ 8} During the months of March through August, C.M. failed to appear for each

and every court appearance and further, failed to comply with any of CCDCFS' objectives. In her absence, the trial court adjudged B.M. to be an abused and dependent child and located and involved the father of B.M., B.W. On August 24, 2010, C.M. appeared at the court's dispositional hearing and, at the request of counsel, received a continuance of the hearing to allow counsel an opportunity to confer with her client.

{¶ 9} As stated above, on October 4, 2010, C.M. walked into CCDCFS offices and asked for Woods-Ferguson. Woods-Ferguson asked C.M. where she had been for the past several months and C.M. simply stated that she was "just out there." Woods-Ferguson arranged for C.M. to complete an updated drug and alcohol assessment. C.M. was diagnosed as cocaine and alcohol dependent and the department recommended residential treatment. On October 19, 2010, C.M. again entered residential substance abuse treatment at the Hitchcock Center For Women.

{¶ 10} On November 9, 2010, C.M. appeared in court with counsel for the dispositional hearing. At that time, C.M. was still a resident at the Hitchcock House but had not completed any of the objectives of her case plan. The trial court heard the testimony of Lebron, Woods-Ferguson, Rebecca Wolfe, B.M.'s foster mother, and B.W., B.M.'s biological father. During trial, Lebron testified that after B.M. was placed into the custody of CCDCFS, she arranged for visitation between the child and C.M. C.M. visited with B.M.

within a week after the birth and then again approximately two weeks later. After that time, C.M. failed to appear for repeated visits and never saw B.M. again. CCDCFS eventually stopped visitation because the child's foster parents were transporting the child to the department for visitation while C.M. never appeared.

{¶ 11} Rebecca Wolfe testified that B.M. had been placed with her, her husband, and their two-year old daughter when she was four days old. On initial placement in the home, B.M. struggled, and screamed constantly. The foster parents worked with B.M., and learned infant massage in an attempt to calm B.M. The child eventually improved. At the time of the hearing, B.M. had lived continuously with the Wolfe family and was on target developmentally. Rebecca Wolfe testified that she considered B.M. to be a part of her family and was willing to provide B.M. with a permanent home. The guardian ad litem report reflected that B.M. was happy and well-adjusted and recommended that the petition for permanent custody be granted.

{¶ 12} The following day, all parties re-appeared for the court's decision. The trial court issued an oral decision finding that "the State has proven its case by clear and convincing evidence and the prayer for permanent custody is granted." The trial court issued a journal entry documenting its decision on November 30, 2010.

{¶ 13} C.M. appeals, raising the five assignments of error contained in the appendix to

this opinion.

{¶ 14} In her first assignment of error, C.M. argues that her trial counsel rendered ineffective assistance in failing to (1) secure her presence for the November 9, 2010 dispositional hearing, or (2) obtain a continuance to allow her to attend the hearing. This assignment of error lacks merit.

{¶ 15} As stated by this Court in *In re B.S.*, 184 Ohio App.3d 463, 2009-Ohio-5497, 921 N.E.2d 320, the standard of review for ineffective assistance of counsel is as follows:

> "The two-part test for ineffective assistance of counsel used in criminal cases, as set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, applies equally in actions by the state to force the permanent, involuntary termination of parental rights. *Jones v. Lucas Cty. Children Servs. Bd.* (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471. The appellant first must show that counsel's performance was deficient. To meet that requirement, he must demonstrate that his counsel made errors so serious that counsel was not functioning as the 'counsel' as guaranteed to a defendant by the Sixth Amendment of the United States Constitution. Id. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.
>
> In addition, the appellant must show that counsel's deficient performance prejudiced his case. In order to meet the second requirement, the appellant must demonstrate that counsel's errors were so serious as to render the result of the trial unreliable. Id. In effect, the appellant must show that there is a reasonable probability that but for counsel's errors, the result of the trial would have been different. Id. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674."

{¶ 16} In the present case, C.M. can meet neither prong of the above-outlined test. C.M.'s argument is premised upon the allegation that C.M. was not present at the November 9, 2010 dispositional hearing. This allegation ignores the record in this case. Both the

transcript and the trial court's journal entry reflect that C.M. was present and in attendance at the November 9, 2010 hearing. Further, C.M. argues at length about the importance of the trial court personalizing the case and hearing from the mother. These arguments are inaccurate as C.M. was present in court and, with the aid of her attorney, chose not to testify on her own behalf. Thus, C.M.'s trial counsel could not have rendered ineffective assistance in either failing to secure her presence at the hearing or in failing to acquire a continuance to allow C.M. to attend the hearing. The record reflects C.M.'s attendance at the November 9, 2010 hearing.

{¶ 17} C.M.'s first assignment of error is overruled.

{¶ 18} In her second assignment of error, C.M. argues that the trial court erred when it failed to issue an order disposing of the motion for permanent custody within 200 days after CCDCFS filed the motion. This assignment of error lacks merit.

{¶ 19} Initially, we note that CCDCFS never filed a motion for permanent custody pursuant to R.C. 2151.414. CCDCFS sought permanent custody of B.M. through a complaint filed pursuant to R.C. 2151.353(A)(4). As such, the time requirements of R.C. 2151.414 do not apply to the present case.

{¶ 20} While R.C. 2151.414 does require a trial court to issue an order disposing of the motion for permanent custody within 200 days of the filing of the motion, the statute goes

on to read:

> "The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court."

{¶ 21} Thus, even if CCDCFS pursued permanent custody through a motion for permanent custody, not a complaint, the trial court's failure to render a decision within 200 days does not provide C.M. with a basis to attack the judgment.

{¶ 22} C.M.'s second assignment of error is overruled.

{¶ 23} In her third assignment of error, C.M. claims the trial court erred when it failed to state, in its journal entry, that the necessary findings were established by clear and convincing evidence. We disagree.

{¶ 24} In cases of abuse, neglect, and dependency, a trial court may grant a request for permanent custody of a child if the court determines by clear and convincing evidence that the child cannot or should not be placed with either parent within a reasonable period of time and that permanent custody is in the child's best interest. R.C. 2151.414(D)(E). C.M. takes this one step further and argues that the trial court must recite the words "clear and convincing evidence" in its journal entry when awarding permanent custody. However, C.M. provides this court with no authority for this position, a failure that allows us to disregard this error. See, App.R. 12(A)(2); App.R. 16(A)(7).

**{¶ 25}** This court has previously held that such specific language is not a requirement. In *In re T.S.*, Cuyahoga App. No. 92816, 2009-Ohio-5496, this court stated: "[d]espite the trial court's failure to use the words 'clear and convincing evidence' in its journal entry, the record was replete with clear and convincing evidence that permanent placement, rather than temporary custody, was in T.S.'s best interest." Thus, the inclusion of the specific language as argued by C.M., is not required.

**{¶ 26}** C.M.'s claim that the record does not support the conclusion that the trial court adhered to the statutory and constitutional requirement of clear and convincing proof is meritless. A review of the trial court's transcript reveals that the court considered the statutory criteria that led to the decision regarding permanent custody. The court specifically stated that it found that the state "has proven its case by clear and convincing evidence." Thus, there is evidence in the record that the trial court adhered to the appropriate standard of proof.

**{¶ 27}** C.M.'s third assignment of error is overruled.

**{¶ 28}** In her fourth assignment of error, C.M. argues that the trial court erred because the journal entry granting permanent custody did not fully and specifically discuss all five of the best interest factors enumerated within R.C. 2151.414(D). This assignment of error lacks merit.

{¶ 29} In this assigned error, C.M. argues that the judgment entry recites, in boilerplate fashion, that the trial court considered all five of the best interest factors, but that such recital renders it impossible to say whether the trial court really considered each of the five factors. This Court has previously held that "the statute does not require the court to list those factors or conditions it found applicable before making its determination that permanent custody is in the child's best interest." *In re T.S.*; *In re I.M.*, Cuyahoga App. Nos. 82669 and 82695, 2003-Ohio-7069. As such, C.M.'s argument fails.

{¶ 30} The determinative factor for the reviewing court is whether the record supports the findings made. *In re T.S.* C.M., however, has limited this assigned error to the court's use of alleged boilerplate language. Finding no error with the court's language, we overrule C.M.'s fourth assignment of error.

{¶ 31} In her fifth and final assignment of error, C.M. argues the trial court's decision to terminate her parental rights was against the manifest weight of the evidence. We disagree.

{¶ 32} Before a trial court may terminate parental rights, it must find by clear and convincing evidence that: (1) it is in the best interest of the child to be placed in the permanent custody of the moving agency, based on an analysis under R.C. 2151.414(D), and (2) that the child cannot be placed with either parent, based on an analysis under R.C.

2151.414(E). C.M. claims the trial court's decision is against the manifest weight of the evidence. In applying the manifest weight standard of review, our role is to determine whether there is relevant, competent and credible evidence upon which a fact finder could base its judgment. *In re Laigle/King Children* (Aug. 13, 2001), Stark App. No. 2001CA00145; *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA-5758. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.

*In re P.R.,* Cuyahoga App. No. 76909, 2002-Ohio-2029. It is based upon this standard that we review C.M.'s final assignment of error.

{¶ 33} R.C. 2151.414(D)(1) provides as follows:

"(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶ 34} Although a trial court is required to consider each of the factors quoted above in making a determination regarding permanent custody, this Court has noted that "[o]nly one of these factors needs to be resolved in favor of the award of permanent custody." *In re Moore* (Aug. 31, 2000), Cuyahoga App. No. 76942.

{¶ 35} In making its decision, the trial court in this case specifically considered all of the above factors. It found that while B.M. was too young to express her wishes, the guardian ad litem appointed on behalf of B.M. recommended permanent custody as being in the child's best interest. The court noted the custodial history of B.M. during her short life: finding that B.M. has been with her foster family her entire life, that it is the only home she has ever known and that B.M. needs legally secure placement. The court recited C.M.'s 23-year history of substance abuse, her four children that had previously been removed, two of them permanently, and that she abandoned B.M. for eight months, making no contact with B.M. since February 2010. Based on the foregoing, the court determined that it was in

the best interest of the child that permanent custody to CCDCFS be granted.

{¶ 36} The trial court's findings are supported by the record. We, therefore, find the court's determination that permanent custody is in the best interests of B.M., is supported by competent, credible evidence.

{¶ 37} Next, we determine whether the court's finding that B.M. cannot be placed with a parent within a reasonable time or should not be placed with a parent, is equally supported by competent, credible evidence.

{¶ 38} R.C. 2151.414(E)(1)-(16) provide a list of conditions, the existence of any one of which, requires a court to conclude that the child cannot be placed with its parents. In the present case, the trial court concluded that the following subsections apply:

"(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental

utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(10) The parent has abandoned the child;

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

{¶ 39} The evidence in the record supports the trial court's conclusions. Department social workers Lebron and Woods-Ferguson testified to C.M.'s twenty-three year history of substance abuse and her failure to complete any of the department's objectives regarding her

chemical dependency and housing situations. They further testified that C.M. visited with the child on only two occasions and abandoned the child for an eight month period. Lastly, the state presented evidence that two of C.M.'s older children had been permanently removed from her custody. While C.M. argues that Woods-Ferguson should have done more to assist her, that argument does not controvert the evidence outlined above.

{¶ 40} Based on the foregoing, we find competent, credible evidence supports the trial court's conclusion that B.M. could not and should not be placed with C.M. Accordingly, the trial court's grant of permanent custody was not against the manifest weight of the evidence.

{¶ 41} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

PATRICIA A. BLACKMON, P.J., and
JAMES J. SWEENEY, J., CONCUR

Appendix

Assignments of Error:

"I. Appellant was denied the right to effective assistance of counsel in a permanent custody case involving her minor child when her court-appointed attorney failed to arrange for her appearance at the dispositional hearing or seek a continuance of the hearing."

"II.   The trial court committed prejudicial error when it failed to issue an order disposing of the motion for permanent custody within two hundred days after the agency files the motion."

"III.   The trial court committed reversible error by terminating appellant's parental rights without finding that the statutory criteria for terminating parental rights had been proven by clear and convincing evidence."

"IV.   The trial court committed reversible error by issuing a judgment entry terminating appellant's parental rights which fails to show that the trial court fully and specifically discussed all five of the 'best interest' factors enumerated in R.C. 2151.414(D)."

"V.   The judgment of the trial court is against the manifest weight of the evidence and constitutes a denial of due process of law."