[Cite as *In re S.D.*, 2013-Ohio-3535.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 99410, 99411, and 99412**

---

# IN RE: S.D., ET AL.
# Minor Children

[Appeal by A.C., Mother]

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-10907793, AD-10907792, and AD-10916364

**BEFORE:** E.A. Gallagher, J., Rocco, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 15, 2013

**ATTORNEY FOR APPELLANT**, **MOTHER**

Britta M. Barthol
P.O. Box 218
Northfield, OH   44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Laura M. Brewster
Assistant County Prosecutor
C.C.D.C.F.S.
3955 Euclid Avenue
Cleveland, OH   44115

**GUARDIAN AD LITEM**

James Dunn
4162 Laurell Lane
North Olmsted, OH   44070

EILEEN A. GALLAGHER, J.:

{¶1} In this consolidated appeal appellant-mother A.C. appeals from the Cuyahoga County Juvenile Division Court's decisions granting permanent custody of her three daughters to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). As required by App.R. 11.1(D), this court has expedited the hearing and disposition of these appeals. For the following reasons, we reverse and remand.

{¶2} CCDCFS filed complaints with respect to appellant's two elder daughters, J.C.[1] and S.D.[2] on April 30, 2010. The complaint alleged that both children had been diagnosed with failure to thrive and that appellant had failed to take the children to necessary medical appointments to address their conditions and had failed to follow through with medical recommendations including maintaining appropriate food logs.

{¶3} In July 2010, appellant admitted to the allegations of the amended complaints and the juvenile court adjudged the children to be neglected. The trial court ordered temporary custody in favor of CCDCFS at that time.

{¶4} Appellant's third daughter, A.C., was born on August 9, 2010. A complaint regarding A.C. was filed on September 8, 2010 alleging that A.C. had been hospitalized since birth due to low birth weight and feeding issues. In addition to the

---

[1] D.O.B. May 3, 2008.

[2] D.O.B. July 24, 2009.

information asserted in the prior complaints, A.C.'s complaint asserted that appellant has no consistent income with which to provide for A.C.'s basic needs. The trial court granted a motion for pre-adjudicatory temporary custody of A.C. on September 13, 2010. Eventually all three girls were placed in the same foster home.

{¶5} On February 2, 2011, appellant stipulated to the allegations in the amended complaint with regard to A.C., and A.C. was found to be dependant. The trial court committed A.C. to the temporary custody of CCDCFS.

{¶6} Between April 2010 and April 2012 numerous pretrial hearings were conducted resulting in extensions of time for the temporary custody orders of the children while appellant made progress towards a case plan of reuniting her with the children.

{¶7} In April 2012, CCDCFS filed a motion seeking permanent custody of both of the older children. In August 2012, CCDCFS filed a motion for permanent custody of A.C. as well. On August 16, 2012, appellant filed a motion for legal custody of the children seeking an order of legal custody in favor of her mother (hereinafter "maternal grandmother").

{¶8} The trial court held a trial on the consolidated cases on December 13, 2012. The trial court issued journal entries on December 28, 2012 granting CCDCFS's motions for permanent custody of the children and denying appellant's motion for legal custody in favor of maternal grandmother. Appellant appeals from these orders assigning the following two assignments of error:

Assignment of Error I: The trial court's decision to award permanent custody to CCDCFS was against the manifest weight of the evidence as it was not supported by clear and convincing evidence.

Assignment of Error II: The trial court erred in granting the motion for permanent custody when there was a suitable relative who could provide a legally secure alternative placement option for the minor children.

{¶9} Because these assignments of error deal with interrelated issues of law and fact, we address them together.

{¶10} In order to terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following: (1) the existence of any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (d); and (2) permanent custody is in the best interest of the child. The court must consider the five factors set forth in R.C. 2151.414(D) in making the latter determination.

{¶11} The record reveals that all three children have been in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period. As such, division (B)(1)(a) of R.C. 2151.414 is inapplicable and the trial court was not required to analyze whether the children could be placed with either of the parents within a reasonable time or should not be placed with the parents. At the same time, it is undisputed that division (B)(1)(d) is satisfied due to the custodial history of the children.

{¶12} The question before the court is whether the record possessed clear and convincing evidence that it is in the best interest of the children to be placed in the permanent custody of CCDCFS. We review a trial court's determination of a child's

best interest under R.C. 2151.414(D) for an abuse of discretion. *In re: D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. We find that the present record lacks clear and convincing evidence that permanent custody is in the best interests of the children.

{¶13} Appellant claims the trial court's decision is against the manifest weight of the evidence. In applying the manifest weight standard of review, our role is to determine whether there is relevant, competent and credible evidence upon which a fact finder could base its judgment. *In Re: B.M.*, 8th Dist. Cuyahoga No. 96214, 2011-Ohio-5176, ¶ 32. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *Id.*, citing *In re P.R.*, 8th Dist. Cuyahoga No. 76909, 2002-Ohio-2029.

{¶14} R.C. 2151.414(D)(1) provides as follows:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the

Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶15} At the time of the removal, appellant and her children were living with maternal grandmother in her two-bedroom home provided through Section 8 housing. The children were removed due to appellant's inability to sufficiently manage their medical needs relating to their failure to thrive diagnoses.

{¶16} During the pendency of this case, the case plan acknowledged by CCDCFS was reunification of the children with appellant. To this end, appellant was to complete domestic violence classes and a psychological evaluation, obtain employment and adequate housing and attend doctor's appointments for the children so that she could gain the requisite understanding of their specialized medical needs.

{¶17} The record indicates that appellant attended domestic violence classes,[3] completed the required psychological evaluation and began counseling for depression and a slight learning disability at the May Dugan Center. The trial court found that appellant failed to complete the mental-health objective. We disagree with the trial court's assessment of the record.

---

[3]Appellant was the *victim* of domestic violence.

**{¶18}** The record indicates that appellant did not have any formal diagnosis of a mental disease or defect. Appellant was attending counseling pursuant to the case plan but her counselor left May Dugan. Appellant was re-assigned a second counselor who promptly left May Dugan as well. CCDCFS social worker Vanessa Armaro, in explaining this confusing period, testified that May Dugan was going through changes at the time. There is no indication that appellant was ever assigned another counselor or that CCDCFS made any efforts to assist in such assignment. Contrary to the trial court's conclusion, the record reflects that appellant made efforts and progress towards substantially complying with the case plan's mental-health objective and to the extent that any deficiency remains, the fault for such deficiency cannot be laid at the feet of appellant.

**{¶19}** Appellant obtained full-time employment as required by the case plan. The record also reflects that appellant attended the vast majority of the children's medical appointments. Although the trial court found fault in appellant's failure to attend every such appointment, CCDCFS's own social worker testified that appellant's employment obligations were the reason she missed some appointments. When appellant knew she would be unable to attend an appointment she asked the children's maternal grandmother to attend in her place. Furthermore, it is clear from the record that appellant has been educated in the specialized medical needs of the children. A CCDCFS social worker testified that appellant had been trained to properly suction A.C. in the event of a severe acid reflux incident such that it was safe for appellant to have unsupervised visits with the

children.    Appellant met with a dietician and thereafter brought safe and appropriate food to her visits with the children.

{¶20}    The record reflects that appellant has appeared for every available visitation opportunity during the pendency of this case.    The record further reflects that appellant and the children have a happy relationship and that the children look forward to seeing her.    The children also have a warm relationship with their maternal grandmother.

{¶21}    The sole issue preventing reunification of this family is appellant's ability to find adequate housing, a completely different concern from the problem that led to the filing of the original complaints in these cases.    The three children presently reside with a foster family and share one bedroom.    CCDCFS has attempted to assist appellant in locating appropriate housing for herself and the children but no witness was able to adequately explain why appellant has been unable to obtain housing.

{¶22}    The children's maternal grandmother has a two-bedroom home where appellant and the children lived prior to the commencement of these cases.    It is unclear to this court what is presently preventing appellant and the children from returning to live with the maternal grandmother.    The evidence at trial indicated that while CCDCFS at one point looked into the maternal grandmother's home it did not conduct a home study because at the time her boyfriend and 18-year-old son were residing with her and the home possessed inadequate space and beds for appellant's family to return.    However, the maternal grandmother testified at trial that her boyfriend and son had since moved out of the home and she now resides there alone.    The record reflects that the home has a

crib and that the maternal grandmother had sought CCDCFS's assistance in procuring bunk beds for the children.[4]

**{¶23}** It gives us great trepidation to consider that appellant's parental rights are to be terminated when a potentially viable reunification option has not been adequately explored. We are gravely concerned that the only apparent block to appellant being reunited with her children as opposed to the family being forever sundered is the ability of the parties to furnish the maternal grandmother's home with a bunk bed. CCDCFS's own witnesses testified to the happy relationship between appellant and the children as well as appellant's significant efforts to improve her parental skills such that she is capable of managing the children's specialized medical needs. It does not sit well with us that this relationship is to be terminated over as trivial a matter as the procurement of a bunk bed.

**{¶24}** CCDCFS's social worker testified that appellant should enter into a shelter as part of a process to obtaining a permanent home for herself and the children. It is unclear how this proposal is superior to returning the children to the home from which they were removed. Pursuant to R.C. 2151.414(A)(2), the trial court, for good cause shown, may continue a hearing on a motion for permanent custody. In light of the significant evidence indicating that appellant has rectified the problems that led to her children being removed, the testimony of the maternal grandmother regarding the present

---

[4]Maternal grandmother also testified that if the children are included in her Section 8 housing she could seek a larger home.

state of her home and CCDCFS's admission that a home study of the residence was incomplete, we find that the trial court abused its discretion in terminating appellant's parental rights without CCDCFS adequately exploring this avenue for reunification. We cannot say that the record contains clear and convincing evidence that it is in the best interest of the children to be placed in the permanent custody of CCDCFS on these facts.

**{¶25}** Appellant's first assignment of error is sustained.

**{¶26}** Although we reverse and remand pursuant to appellant's first assignment of error, for the sake of clarity we briefly note that appellant's second assignment of error wherein she asserts that the trial court erred overruling her motion for legal custody in favor of maternal grandmother is without merit. In addition to possessing the same housing conundrum for which we reverse, the record clearly reflects, by her own testimony, that maternal grandmother is without the financial resources to adequately care for the children.

**{¶27}** Appellant's second assignment of error is overruled.

**{¶28}** This case is reversed and remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

PATRICIA A. BLACKMON, J., CONCURS;
KENNETH A. ROCCO, P.J., DISSENTS
WITH SEPARATE DISSENTING OPINION

KENNETH A. ROCCO, P.J., DISSENTING:

{¶29} I respectfully dissent from the majority opinion's disposition of this appeal.

On the record before this court, I cannot find that the juvenile court abused its discretion

when it determined that an award of permanent custody to CCDCFS was in the children's

best interests.

{¶30} The majority opinion's focus is misplaced. The "best interest

determination" focuses on the child, not the parent. *In re Awkal*, 95 Ohio App.3d 309,

315, 642 N.E.2d 424 (8th Dist.1994). The discretion that the juvenile court enjoys in

determining whether an order of permanent custody is in the best interest of a child should

be accorded the utmost respect, given the nature of the proceeding and the impact the

court's determination will have on the lives of the parties concerned. *Id.* at 316.

{¶31} In this case, the juvenile court determined, pursuant to R.C.

2151.414(B)(1)(d), that the children had "been in the temporary custody of a public

children services agency * * * for twelve or more months of a consecutive twenty-two month period." The majority opinion concedes that this requirement was met.

**{¶32}** The juvenile court additionally found that A.C. had "demonstrated a lack of commitment toward the child[ren] by regularly supporting * * * [them] when able to do so," and by other actions also had failed "to provide an adequate permanent home for the child[ren]." R.C. 2151.414(E)(4). The majority opinion misconstrues the evidence presented at the dispositional hearing that supported this finding.

**{¶33}** The evidence presented showed that, even some two years after her children had been in the agency's temporary custody, appellant lacked a reliable source of income sufficient to provide for herself and three medically fragile children. She lacked housing of her own. Most importantly, she lacked the training and *means* to *consistently* care for the children's physical limitations. Appellant had obtained only part-time employment at a minimum wage. R.C. 2151.414(E) *requires* the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time once the court has determined that one or more of the factors exist. *In re William S.*, 75 Ohio St.3d 95, 99, 1996-Ohio-182, 661 N.E.2d 738; *see also In re T.G.*, 8th Dist. Cuyahoga No. 90392, 2008-Ohio-2034, ¶ 42.

**{¶34}** Regarding the best interest of the children, CCDCFS presented clear and convincing evidence that the children were together in the same "special needs medically fragile" foster home in which they had been placed for over two years of their young lives; that they were happy; that their foster parents provided for all of their medical,

physical, emotional, and educational needs; that they had a strong bond with the foster family; and that the foster parents indicated a willingness to adopt all three. The majority opinion also fails to mention that the children's guardian ad litem ("GAL") opined that permanent custody would be in the children's best interest.

{¶35} The evidence also demonstrated that appellant had failed to comply with the case plan objectives that had been in place for her since the spring of 2010. Even after more than two years, she had not: (1) pressed her social worker to help her complete the psychological counseling that was intended, not to address any "formal diagnosis" as the majority opinion notes, but, rather, "to address thinking patterns that she had, [and] to address and understand[ ] the importance of the medical needs of her three children"; (2) attended the early childhood parental guidance program to which she had been referred; (3) obtained a residence of her own in which she could house three medically fragile children; (4) sufficient income to support herself and three medically fragile children; and (5) consistently attended the children's medical appointments so as to become fully trained in emergency situations that might arise due to their food allergies and chronic esophagitis. For these reasons, and because the children needed a legally secure placement, the children's GAL recommended permanent custody as being in their best interest.

{¶36} In finding that granting permanent custody to CCDCFS was in the children's best interest, the juvenile court thoroughly considered the evidence and testimony. The

juvenile court did not ignore the steps appellant took, nor did it base its decision on appellant's, or her mother's, lack of a bunk bed.

**{¶37}** Appellant's positive relationship with the children was not, in itself, enough to demonstrate a contrary conclusion. This court previously has noted that the mere existence of a good relationship between the parent and her child is insufficient. *In re K.M.*, 8th Dist. Cuyahoga No. 95374, 2011-Ohio-349, ¶ 23. I find it hard to justify substituting this court's judgment for that of the juvenile court, especially when appellant did not tell the judge in her own words her reasons for believing that her children's best interests would be served by being returned to her custody.

**{¶38}** Moreover, the majority opinion presents a fundamental inconsistency in arriving at its disposition of this appeal. How, on one hand, can the children be returned to the "home from which they were removed," i.e., their maternal grandmother's home, but, on the other hand, can their maternal grandmother support the children's needs, as well as appellant's, when she "is without the financial resources to adequately care for the children"?

**{¶39}** Because I believe the juvenile court's decision is supported by clear and convincing evidence, I dissent.